UNITED STATES of America ex rel. Evsey S. PETRUSHANSKY, alias Peter Green, a fugitive from Justice of the United Mexican States, Relator,

v.

Anthony R. MARASCO, United States Marshal for the Southern District of New York, Respondent.

United States District Court
S. D. New York.
April 5, 1963.

Robert M. Morgenthau, U. S. Atty., for Southern Dist. of New York, by Victor Temkin, Asst. U. S. Atty., for Southern Dist. of New York, for respondent.

Gold, Lazar & Cooper, Jamaica, N. Y., for Evsey S. Petrushansky. Leonard Cooper and Michael J. Lazar, Jamaica, N. Y., of counsel.

NOONAN, District Judge.

This is a proceeding on a writ of habeas corpus to test the validity of the detention of one, Evsey S. Petrushansky, presently in the custody of the United States Marshal for the Southern District of New York.

On October 3, 1962 extradition proceedings were initiated at the request of the United Mexican States pursuant to a Treaty of Extradition proclaimed on April 22, 1899, 31 Stat. 1818 between Mexico and the United States. A formal complaint was issued on that date and filed with the United States Commissioner for the Southern District of New York by an Assistant United States Attorney acting on behalf of the United Mexican States.

Said complaint charged the relator, Evsey S. Petrushansky alias Peter Green, with the commission of the crime of murder, within the United Mexican States. A warrant of arrest was issued on the same date pursuant to Title 18 United States Code § 3184, and a detainer was lodged with the Warden of the New York City Jail, where the fugitive was then incarcerated on a charge of possession of obscene matter.

Upon the fugitive's release from the custody of the State on October 5, 1962, he was placed in Federal detention pending the determination of the instant hearing and was arraigned before the United States Commissioner, John B. Garrity, upon the aforementioned complaint.

At the time of said arraignment Petrushansky was represented by counsel who have continually represented him at all proceedings before the Commissioner.

Within the 40 days provided by Article X of the aforementioned treaty the documents in support of extradition were filed with the Commissioner on behalf of the United Mexican States as well as requests from the United Mexican States to the State Department of the United States seeking the fugitive's extradition.

Hearings were commenced on December 3, 1962, and continued on December 6, 1962, January 11, 1963, January 15, 1963 and January 18, 1963, before Commissioner Bishopp.

On January 18, 1963, Commissioner Bishopp ruled, (1) that Evsey S. Petrushansky is the person wanted by the United Mexican States; (2) that the offense charged is a crime under the laws of Mexico and is also punishable under the laws of the State of New York; (3) that the evidence is sufficient to establish probable cause to believe that the offense charged was committed by Petrushansky in Mexico; and (4) that the fugitive is extraditable under the applicable treaty. He then remanded Petrushansky to the United States Marshal for the Southern District of New York to await the order of the Secretary of State of the United States.

Said order has been delayed by the proceedings now before this court.

I. *Statute and Treaty Involved*

Title 18, United States Code, Section 3184.

§ 3184. Fugitives from foreign country to United States.

"Whenever there is a treaty or convention for extradition between the United States and any foreign government, any justice or judge of the United States, or any commissioner authorized so to do by a court of the United States, or any judge of a court of record of general jurisdiction of any State, may, upon complaint made under oath, charging any person found within his juris-

diction, with having committed within the jurisdiction of any such foreign government any of the crimes provided for by such treaty or convention, issue his warrant for the apprehension of the person so charged, that he may be brought before such justice, judge, or commissioner, to the end that the evidence of criminality may be heard and considered. If, on such hearing, he deems the evidence sufficient to sustain the charge under the provisions of the proper treaty or convention, he shall certify the same, together with a copy of all the testimony taken before him, to the Secretary of State, that a warrant may issue upon the requisition of the proper authorities of such foreign government, for the surrender of such person, according to the stipulations of the treaty or convention; and he shall issue his warrant for the commitment of the person so charged to the proper jail, there to remain until such surrender shall be made."

Title 18, United States Code, Section 3190.

§ 3190. Evidence on hearing.

"Depositions, warrants, or other papers or copies thereof offered in evidence upon the hearing of any extradition case shall be received and admitted as evidence on such hearing for all the purposes of such hearing if they shall be properly and legally authenticated so as to entitle them to be received for similar purposes by the tribunals of the foreign country from which the accused party shall have escaped, and the certificate of the principal diplomatic or consular officer of the United States resident in such foreign country shall be proof that the same, so offered, are authenticated in the manner required."

Treaty of Extradition between the United States of America and the United Mexican States proclaimed April 22, 1899.

## "ARTICLE I.

"The Government of the United States of America and the Government of the United States of Mexico mutually agree to deliver up persons who, having been charged with or convicted of any of the crimes and offenses specified in the following article, committed within the jurisdiction of one of the contracting parties, shall seek an asylum or be found within the territory of the other.

## "ARTICLE II.

"Persons shall be delivered up, according to the provisions of this convention, who shall have been charged with, or convicted of, any of the following crimes or offenses:

"1. Murder, comprehending the crimes known as parricide, assassination, poisoning and infanticide. * * *"

## "ARTICLE III.

"Extradition shall not take place in any of the following cases:

"1. When the evidence of criminality presented by the demanding party would not justify, according to the laws of the place where the fugitive or person so charged shall be found, his or her apprehension and commitment for trial, if the crime or offense had been there committed. * * *"

## "ARTICLE VIII.

"Requisitions for the surrender of fugitives from justice, under this present convention, shall be made by the respective diplomatic agents of the contracting parties, or, in the event of the absence of these from the country or from its seat of government, they may be made by superior consular officers.

"If a person whose extradition is asked for shall have been convicted of a crime or offense, a copy of the sentence of the court in which he was convicted, authenticated under its seal, with attestation of the official character of the Judge by the

proper executive authority, and of the latter by the minister or consul of the respective contracting party, shall accompany the requisition.

"When, however, the fugitive shall have been merely charged with a crime or offense, a similarly authenticated and attested copy of the warrant for his arrest in the country where the crime or offense is charged to have been committed, and of the depositions upon which such warrant may have been issued, must accompany the requisition of as aforesaid.

"Whenever, in the schedule of crimes and offenses of article 2nd, it is provided that surrender shall depend on the fact of the crime or offense charged being punishable by imprisonment or other corporal punishment according to the laws of both contracting parties, the party making the demand for extradition shall furnish, in addition to the documents above stipulated, an authenticated copy of the law of the demanding country defining the crime or offense, and prescribing a penalty therefor.

"The formalities being fulfilled, the proper executive authority of the United States of America, or of the United Mexican States, as the case may be, shall then cause the apprehension of the fugitive, in order that he or she may be brought before the proper judicial authority for examination. If it should then be decided that, according to the law and the evidence, the extradition is due pursuant to the terms of this convention, the fugitive may be given up according to the forms of law prescribed in such cases."

"ARTICLE X.

"On being informed by telegraph or otherwise, through the diplomatic channel, that a warrant has been issued by competent authority for the arrest of a fugitive criminal charged with any of the crimes enumerated in the foregoing articles of this treaty, and on being assured from the same source that a requisition for the surrender of such criminal is about to be made accompanied by such warrant and duly authenticated depositions or copies thereof in support of the charge, each government shall endeavor to procure the provisional arrest of such criminal and to keep him in safe custody for such time as may be practicable, not exceeding forty days, to await the production of the documents upon which the claim for extradition is founded."

■ The scope of inquiry by this court on this habeas corpus proceeding is narrowly circumscribed. As the Supreme Court has stated, in Ornelas v. Ruiz, 161 U.S. 502, at pages 508–509, 16 S.Ct. 689, at pages 691–692, 40 L.Ed. 787:

"By repeated decisions of this court it is settled that a writ of habeas corpus cannot perform the office of a writ of error, and that, in extradition proceedings, if the committing magistrate has jurisdiction of the subject-matter and of the accused, and the offence charged is within the terms of the treaty of extradition, and the magistrate, in arriving at a decision to hold the accused, has before him competent legal evidence on which to exercise his judgment as to whether the facts are sufficient to establish the criminality of the accused for the purposes of extradition, such decision cannot be reviewed on habeas corpus. * * * Whether an extraditable crime has been committed is a question of mixed law and fact, but chiefly of fact, and the judgment of the magistrate rendered in good faith on legal evidence that the accused is guilty of the act charged, and that it constitutes an extraditable crime, cannot be reviewed on the weight of evidence, and is final for the purposes of the preliminary examination unless palpably erroneous in law."

See also Gallina v. Fraser, D.C., 177 F.Supp. 856 wherein the scope of review has been clearly outlined by Judge Smith.

At the outset this court notes that there has been no issue raised as to valid existence of the Treaty of Extradition as between Mexico and the United States. Likewise, there is no question that Evsey Petrushansky, the relator, is the person sought by the demanding nation.

Relator in urging that the writ of habeas corpus be sustained bases his position on several grounds.

The relator contends the warrant issued for his arrest was invalid; hence, the Commissioner had no jurisdiction over his person, because it was based on a complaint insufficient on its face, and filed by an Assistant United States Attorney whose knowledge of the crime was gained through hearsay—to wit, diplomatic channels.

■■ The complaint upon which the Extradition Warrant was issued states that the Assistant United States Attorney having been informed through diplomatic channels was acting for and in behalf of the Government of the United Mexican States. It charges the relator with having committed murder within Mexico and requests that he be provisionally arrested in accordance with Article X of said Extradition Treaty. Article X quoted above provides that a person wanted by a contracting party to the treaty may be held for at least forty days to await the production of the documents upon which extradition is founded. Such papers and documents were filed within that time limit requesting the extradition of petitioner and informing the Secretary of State that a warrant for the relator's arrest was issued in Mexico on December 22, 1961. At the hearings held before the Commissioner said documents were admitted into evidence.

The question of whether an Assistant United States Attorney is a proper party to initiate such proceedings along with the question of whether his knowledge gained through diplomatic channels is a sufficient basis to support a complaint has long been settled in the affirmative by the Supreme Court. In Fernandez v. Phillips, 268 U.S. 311, at page 312, 45 S.Ct. 541, at page 542, 69 L.Ed. 970, it stated:

"It is objected in the first place that the complaint and warrant are defective. The complaint was filed by an Assistant District Attorney of the United States for the District of New Hampshire. It alleged that the complainant was informed 'through diplomatic channel' that the appellant was duly and legally charged by the United States of Mexico with the crime, and on behalf of that government prayed the arrest. Of course whatever form of words was used, the complaint necessarily was upon information, but as appeared at the hearing it was filed by order of the Attorney General, upon request of the Secretary of State, enclosing a request for the extradition from the Mexican Government and a copy of proceedings in a Mexican Court finding that the crime was duly proved against the appellant and ordering his arrest, many pages of evidence being appended. This was enough."

See also Ex parte Yordi, D.C.Tex., 166 F. 921.

■ Relator further contends that the complaint was devoid of sufficient details of the crime to authorize a warrant of arrest to issue. It is his position that in order for one to be extradited for the crime of murder the complaint in question must set forth in detail the elements of the crime as found in Sec. 1041 of the Penal Law of New York, McK.Consol. Law, c. 40 and the required information as found in Article XIX of the Constitution of Mexico. While it is true the complaint in question here charges the crime of murder without any specific details, this court feels that any insufficiency in detail was amply satisfied at the extended hearings held before the Commissioner. There can be no question in the mind of this court that the relator, represented as he was by competent counsel, was in any sense in doubt as to the nature and details of the crime charged.

As the Supreme Court stated in Yordi v. Nolte, 215 U.S. 227 at page 232, 30 S.Ct. 90 at page 92, 54 L.Ed. 170:

"We think the evidence produced at the hearing justified the detention of the accused and corrected any irregularity in the complaint. As this court said in Nashimura [Nishimura] Ekiu v. United States, 142 U.S. 651, 662 [12 S.Ct. 336, 35 L.Ed. 1146]: 'A writ of habeas corpus is not like an action to recover damages for an unlawful arrest or commitment, but its object is to ascertain whether the prisoner can lawfully be detained in custody; and if sufficient ground for his detention by the Government is shown, he is not to be discharged for defects in the original arrest or commitment.'"

See also Ex parte Sternaman, D.C.N.Y., 77 F. 595, at p. 598:

"That the petitioner was fully informed of the charge against her is beyond dispute. She appeared with counsel and the long investigation was concluded without objection that the complaint failed in particularity. The case of In re Adutt, 55 Fed. 376, is authority for the proposition that in such cases the commissioner may, upon objection by the defendant, make the complaint more definite and certain. 'That is,' says the court, 'a matter for the commissioner acting within his jurisdiction, and not a matter going to the jurisdiction of the commissioner to entertain the complaint.'"

It is, therefore, the opinion of this court that the warrant of arrest was properly issued and that the Commissioner had obtained proper jurisdiction of the relator for purposes of extradition. Likewise from the hearings held before him, the Commissioner could properly determine from the testimony therein, that the crime of murder is an offense under the laws of Mexico and is punishable under the laws of the State of New York, any inadequacy of information in the complaint notwithstanding.

■ We now come to the question of whether there was competent and legal evidence presented before the Commissioner to substantiate his holding that probable cause exists to extradite the relator for the crime charged. Contrary to the opinion expressed by the relator this court believes ample evidence was presented to substantiate the commissioner's finding.

■ The affidavit of Joel David Kaplan clearly implicates the relator with the murder of Louis M. Vidal, Jr. This statement together with the statements of Louis de Garay Jaimes and the hotel workers, when read in conjunction with the various police records, present a sound basis of competent and legal evidence upon which the Commissioner could act. It has long been the law that the evidence necessary to hold one for extradition need not be of the same quality as that necessary for a trial on the merits. Indeed, in Glucksman v. Henkel, 221 U.S. 508, at page 512, 31 S.Ct. 704 at page 705, 55 L.Ed. 830 (1911) Mr. Justice Holmes stated:

"It is common in extradition cases to attempt to bring to bear all the factitious niceties of a criminal trial at common law. But it is a waste of time. For while of course a man is not to be sent from the country merely upon demand or surmise, yet if there is presented, even in somewhat untechnical form according to our ideas, such reasonable ground to suppose him guilty as to make it proper that he should be tried, good faith to the demanding government requires his surrender. Grin v. Shine, 187 U.S. 181, 184 [23 S.Ct. 98, 47 L.Ed. 130]. See Pierce v. Creecy, 210 U.S. 387, 405 [28 S.Ct. 714, 52 L.Ed. 1113]. We are bound by the existence of an extradition treaty to assume that the trial will be fair. The evidence in this case seems to us sufficient to require us to affirm the judgment of the Circuit Court."

The relator further contends that the Commissioner was in error when he re-

fused to admit into evidence certain documents and testimony which the relator claims would have shown that he was not in Mexico on the date of the murder.

■ Extradition hearings as was pointed out above are not to be considered trials. It is not the duty of the Commissioner to try the issues. Rather it is his function to determine whether probable cause exists to hold the accused for extradition on the crime charged by the demanding nation. In Charlton v. Kelly, 229 U.S. 447, at page 461, 33 S.Ct. 945, at pages 949–950, 57 L.Ed. 1274, the court said:

"There is not and cannot well be any uniform rule determining how far an examining magistrate should hear the witnesses produced by an accused person. The proceeding is not a trial. The issue is confined to the single question of whether the evidence for the State makes a prima facie case of guilt sufficient to make it proper to hold the party for trial. Such committing trials, if they may be called trials in any legal sense, are usually regulated by local statutes. Neither can the courts be expected to bring about uniformity of practice as to the right of such an accused person to have his witnesses examined, since if they are heard, that is the end of the matter, as the ruling cannot be reversed. In this case the magistrate refused to hear evidence of insanity. It is claimed that because he excluded such evidence, the judgment committing appellant for extradition is to be set aside as a nullity, and the accused set at liberty. At most the exclusion was error not reviewable by habeas corpus."

The avenues of relief open to an accused in an extradition proceeding are indeed narrow. First National City Bank of New York v. Aristeguieta, 287 F.2d 219 at page 226 (2 Cir., 1960) said:

"[T]he defenses available to the fugitive are extremely limited: he cannot, for example, introduce evidence which contradicts the demanding country's proof (Collins v. Loisel, 1922, 259 U.S. 309, 42 S.Ct. 469, 66 L.Ed. 956; Charlton v. Kelly, 1913, 229 U.S. 447, 33 S.Ct. 945, 57 L.Ed. 1274); evidence to establish alibi (Desmond v. Eggers, 9 Cir., 1927, 18 F.2d 503, motion to stay execution denied, 274 U.S. 722, 47 S.Ct. 657, 71 L.Ed. 1341; In re Wadge, D.C. [N.Y.] 1883, 15 F. 864). * * * the actual guilt of the fugitive does not have to be established, but instead the demanding country need show only probable cause that he is guilty."

■ Accordingly this court finds that the Commissioner did not abuse his discretion in excluding the documents and testimony proffered by the relator.

The court hereby orders the writ to be discharged.

So ordered.