**Billy G. SAYNE, Petitioner-Appellant,**

v.

**Eugene S. SHIPLEY, Chief, Police Division, Canal Zone Government, et al., Respondents-Appellees.**

No. 26772.

United States Court of Appeals
Fifth Circuit.

Nov. 10, 1969.

E. J. Berger, Cristobal, Canal Zone, Albert J. Joyce, Jr., Balboa, Canal Zone John Goodwin, Shreveport, La., for petitioner-appellant.

Murray R. Stein, Atty. Dept. of Justice, Washington, D. C., Rowland K. Hazard, U. S. Atty., District of the Canal Zone, Balboa, Canal Zone for respondents-appellees.

Paul A. Nejelski, Atty., Dept. of Justice, Washington, D. C., of counsel.

Before WISDOM and DYER, Circuit Judges, and KRENTZMAN, District Judge.

KRENTZMAN, District Judge:

This is an appeal from an order of the United States District Court for the District of the Canal Zone entered, after hearing, on July 25, 1968. The order dismissed a petition for writ of habeas corpus filed by appellant, Billy G. Sayne, a lance corporal in the United States Marine Corps, stationed in the Marine barracks at Rodman, Canal Zone. Jurisdiction of the court is founded on 28 U.S. C.A. § 2253.

The facts underlying the case are these:

On February 12, 1968, Fernando Eleta A., Minister of Foreign Relations, Republic of Panama, sent a letter to Major General Walter P. Leber, Governor of the Canal Zone, requesting that the Governor extradite Billy G. Sayne. Sayne had been accused by the Eighth Circuit Judge of the Panama Circuit of robbing, at gunpoint, a drug store in Panama City, Republic of Panama, on August 1, 1967, and fleeing immediately into the Canal Zone. An order for his arrest had been issued by the Panama Court. Accompanying the Minister's letter was a copy of the "Auto de enjuiciamiento" which is analogous to an indictment. In the "Auto de enjuiciamiento" the Eighth Circuit Judge stayed criminal proceedings against three other United States Marines who had accompanied Sayne into Panama City, Panama, but did not appear to have taken part in the robbery.

The request for extradition was made pursuant to (1) Article XVI of a 1903 Treaty between the United States and the Republic of Panama, 33 Stat. 2238, and (2) an Executive Order of the Governer of the Canal Zone dated September 19, 1906.

Pursuant to provisions of the Canal Zone Code, the Governor of the Canal Zone determined that Sayne was extraditable under the Treaty and the Code. He caused a warrant to be issued for the arrest of Sayne on July 2, 1968. Sayne was taken into custody by the Canal Zone police pursuant to that warrant on the same date for delivery to the duly authorized agents of the Republic of Panama.

Also on July 2, 1968, Sayne sought a Petition for Writ of Habeas Corpus against Eugene S. Shipley, Chief of Police for the Canal Zone. The writ was issued on the same day and a hearing thereon held on July 25, 1968.

During the hearing, Sayne's counsel admitted that Sayne was the individual sought by the Republic of Panama. Sayne's counsel further admitted that a crime was charged in the Republic of Panama.

After a full hearing, the court entered an oral opinion in which it found that a crime had been charged in the Republic of Panama; that Sayne is the person charged with that crime; that Sayne was in the Republic of Panama when the

crime was committed; and that the extradition of United States citizens from the Canal Zone to the Republic of Panama is pursuant to the 1903 Treaty and the Canal Zone Code. The order was entered on July 29, 1968, dismissing the petition, quashing the Writ of Habeas Corpus and remanding Sayne to the custody of his commanding officer, pending an appeal.

On August 27, 1968, Sayne filed a notice of appeal to this Court from the District Court's order.

Appellant's first point on appeal is that the District Court erred in ruling that the extradition of United States citizens from the Canal Zone to Panama is governed by Sections 5081 through 5092 of Title 6 of the Canal Zone Code.

These sections [1] had their origin in a treaty between the United States and Panama [2] signed November 18, 1903, effective February 26, 1904, hereinafter referred to as the 1903 Treaty. Article XVI of this treaty provides:

"The two Governments shall make adequate provision by future agreement for the pursuit, capture, imprisonment, detention and delivery within said zone and auxiliary lands to the authorities of the Republic of Panama of persons charged with the commitment of crimes, felonies or misdemeanors without said zone and for the pursuit, capture, imprisonment, detention and delivery without said zone to the authorities of the United States of persons charged with the commitment of crimes, felonies and misdemeanors

within said zone and auxiliary lands." 33 Stat. 2238–2239.

Pursuant to Article XVI, the Governor of the Canal Zone issued an executive order on September 19, 1906 providing for the return of fugitives to Panama.[3] The Executive Order of 1906 was eventually incorporated into the original Canal Zone Code established by Act of Congress in 1932.[4] These provisions became Section 881 through 892 of Title 6 of the 1934 Canal Zone Code,[5] and in 1962 became Sections 5081 through 5092 of Title 6 of the present Canal Zone Code.

Appellant asserts on appeal that extradition from the Canal Zone is subject to the terms of a treaty between the United States and Panama [6] signed May 25, 1904, effective May 12, 1905—hereinafter called the 1904 Treaty—and that this treaty supersedes Article XVI of the 1903 Treaty.[7]

Article V of the 1904 Treaty provides:

"Neither of the contracting parties shall be bound to deliver up its own citizens or subjects under the stipulations of this Treaty."
34 Stat. 2851, 2855.

Appellant points out that an almost identical provision [8] in a 1909 Treaty with France provides:

"Neither of the contracting Parties shall be bound to deliver up its own citizens or subjects under the stipulations of this convention."

and was construed by the U. S. Supreme Court to bar extradition of United States citizens to France.[9] Citing the similar

---

1. 6 C.Z.C §§ 5081–5092, 76A Stat. 554–555. See Appendix 1.

2. Isthmian Canal Convention, 33 Stat. 2234.

3. The President of Panama took similar action on September 22, 1906.

4. 47 Stat. 574.

5. 48 Stat. 1122; Canal Zone Code of 1934.

6. Treaty for the Mutual Extradition of Criminals, 34 Stat. 2851.

7. Appellee concedes that other Articles of the 1903 Treaty, but not Article XVI, have been superseded by later treaties;

see, e. g., 53 Stat. 1807; 6 U.S.T. & O.I.A. 2273.

8. 37 Stat. 1526, 1530.

9. Valentine v. United States ex rel. Neidecker, 299 U.S. 5, 57 S.Ct. 100, 81 L.Ed. 5 (1936). The Court reasoned that a treaty provision to the effect that the United States is not bound to deliver up its citizens, without more, does not authorize extradition of United States citizens since it does not grant a power of extradition to the executive, who cannot deprive United States Citizens of their liberty unless "authorized by law," that is,

language in Article V of the 1909 Treaty with France and Article V of the 1904 Treaty, appellant argues that the latter forbids extradition of United States citizens to Panama.

We do not reach the question whether the 1904 Treaty forbids such extradition, since we find it inapplicable. We reject appellant's argument that the 1904 Treaty instead of the 1903 Treaty, and the proclamation and statutes based thereon, controls the extradition of United States citizens from the Canal Zone to Panama, and hold that Article XVI of the 1903 Treaty has not been superseded, for the following reasons:

*First*: Article XVI is concerned only with special cases of extradition between the two countries, viz. extradition from the Canal Zone to Panama and vice versa.[10] The 1904 Treaty, on the other hand, has to do with extradition in general between the two countries, and makes no mention of the Canal Zone.[11] In addition, unlike most extradition arrangements, which are limited to certain listed offenses, the provisions applicable to the Canal Zone extend to all crimes against the laws of Panama.[12] The reason is simple. The Canal Zone cuts a swath ten miles wide through the middle of Panama. Residents of the Canal Zone and Panama move freely across unguarded borders. In negotiating for the Panama Canal, the two concerned nations recognized that they were creating a unique area. Relations between the Zone and the Republic of Panama would be different from the usual relationships between two foreign countries because of the geographical location of the Zone. There was, therefore, a necessity for special treatment of extradition from the Canal Zone, as distinguished from the United States proper; as a consequence, the 1903 Treaty envisions the former situation, the 1904 Treaty the latter.

*Second:* Section 4981 of Title 6 of the Canal Zone Code is as follows:

"All laws and treaties relating to the extradition of persons accused of crime in force in the United States, *to the extent that they are not in conflict with or superseded by any special treaty entered into between the United States and the Republic of Panama with respect to the Canal Zone,* and all laws relating to the rendition of fugitives from justice as between the several States and Territories of the United States, shall extend to and be considered in force in the Canal Zone, and for such purposes the Canal Zone shall be considered and treated as an organized Territory of the United States."

76A Stat. 547. (Italics added.)

The italicized phrase, by clear implication, refers to Article XVI of the 1903 Treaty, thus demonstrating the Treaty is still in force and that it is a special arrangement between the two countries regarding extradition from the Canal Zone to Panama. Any other interpretation renders the phrase superfluous or incomprehensible.

*Third*: The Assistant Legal Advisor for Treaty Affairs of the State Department has advised the District Court that Article XVI of the 1903

unless a "statute or treaty confers the power (upon him)." Id. 299 U.S. 5, 9, 57 S.Ct. 100, 102.

10. "The two Governments shall make adequate provision * * * for the * * * delivery *within said zone* * * * to the authorities of the Republic of Panama of persons charged with the commitment of crimes * * * *without said zone* and for the * * * delivery without said zone to the authorities of the United States of persons charged with the commitment of crimes * * * within said zone * * *. 33 Stat. 2234, 2238–2239.

11. "The United States of America and the Republic of Panama * * * have resolved to conclude a treaty for the extradition of fugitives from justice between the United States of America and the Republic of Panama * * *." 34 Stat. 2851.

12. The 1904 Treaty refers only to certain enumerated extraditable crimes 34 Stat. 2851, 2852–2853

Treaty is still in effect.[13] Because we recognize that the conduct of foreign affairs is a political, not a judicial function, such advice, while not conclusive on this Court, is entitled to great weight and importance. Terlinden v. Ames, 184 U.S. 270, 22 S.Ct. 484, 46 L.Ed. 534 (1902). It is the general rule that the courts will accord great, but not binding, weight to a determination by the Executive Department that a treaty is terminated, at least when private rights are involved. Ivancevic v. Artukovic, 211 F.2d 565, 574 (9 Cir. 1954), cert. den. Artukovic v. Ivancevic, 348 U.S. 818, 75 S.Ct. 28, 99 L.Ed. 645, reh. den. 348 U.S. 889, 75 S.Ct. 202, 99 L.Ed. 698. We find the Executive's letter in this matter highly persuasive and, in conjunction with our other reasons, sufficient to hold that Article XVI of the 1903 Treaty is now in effect and controlling.

Appellant's second point on appeal is that he was deprived of his right to due process.

Sections 5081 through 5092 of Title 6 of the Canal Zone Code,[14] dealing with extradition of fugitives from the Canal Zone to Panama, provide that all persons accused by the courts of the Republic of Panama as authors of crimes against the laws of that Republic shall be delivered to the authorities of the Republic of Panama upon demand and in compliance with procedures set out therein; that the demand is to be made to the Governor of the Canal Zone; and that the accused shall be turned over to Panamanian authorities unless the Governor, in his discretion, declines to comply.

Thus, under the Canal Zone Code an extraditee has no right to an automatic hearing before a judicial officer to contest his extradition. The Governor of the Canal Zone alone determines whether the extraditee is the person charged, whether a crime has been charged, whether there is probable cause that the extraditee is guilty.

Appellant contends that he has a constitutional right to an automatic hearing before a judicial officer before he can be extradited. Since Sections 5081 through 5092 do not require such a hearing, and since he was not in fact afforded one in the course of the extradition proceedings below, appellant avers that the order of extradition and arrest of July 2, 1968, is null and void.

The automatic hearing appellant contends is a constitutional right is statutorily authorized in most United States extradition proceedings to foreign countries. 18 U.S.C.A. § 3184 says:

"Whenever there is a treaty or convention for extradition between the United States and any foreign government, any justice or judge of the United States, or any magistrate authorized so to do by a court of the United States, or any judge of a court of record of general jurisdiction of any State, may, upon complaint made under oath, charging any person found within his jurisdiction, with having committed within the jurisdiction of any such foreign government any of the crimes provided for by such treaty or convention, issue his warrant for the apprehension of the person so charged, that he may be brought before such justice, judge, or magistrate, to the end that the evidence of criminality may be heard and considered. If, on such hearing, he deems the evidence sufficient to sustain the charge under the provisions of the proper treaty or convention, he shall certify the same, together with a copy of all the testimony taken before him, to the Secretary of State, that a warrant may issue upon the requisition of the proper authorities of such foreign government, for the surrender of such person, according to the stipulations of the treaty or convention; and he shall issue his warrant for the commitment of the person so charged to the proper jail,

13. See, Affidavit of Assistant Legal Advisor for Treaty Affairs in Appendix 2 to this opinion.

14. See note 1, supra.

·there to remain until such surrender shall be made."

Thus, almost all international extraditions by the United States including those from the Canal Zone to any country other than Panama, are preceded by a hearing before a judicial officer. Only in the unique fact situation involved here—an extradition from the Canal Zone to Panama—is a hearing not furnished by statute.

Before passing on the merits of appellant's claim of a right to be provided a judicial hearing before extradition, it would be salutary to study the workings of Section 3184.

■■■ Hearings held pursuant to Section 3184 are in the nature of a preliminary hearing. Merino v. United States Marshal, 326 F.2d 5, 12 (9 Cir. 1963). The foreign country does not have to show actual guilt, only probable cause that the fugitive is guilty. Factor v. Laubenheimer, 290 U.S. 276, 291, 54 S.Ct. 191, 78 L.Ed. 315 (1933); Charlton v. Kelly, 229 U.S. 447, 459–461, 33 S.Ct. 945, 57 L.Ed. 1274 (1913). The magistrate [15] does not inquire into the guilt or innocence of the accused; he looks only to see if there is evidence sufficient to show reasonable ground to believe the accused guilty. Wacker v. Bisson, 370 F.2d 552, 553 (5 Cir. 1967), hereinafter 1967 *Wacker*. The magistrate also determines whether the offense charged is extraditable and whether the person brought before him is the one accused of crime. Ex parte Charlton, 185 F. 880, 888 (C.C. D.N.J.1911), affirmed 229 U.S. 447, 33 S.Ct. 945, 57 L.Ed. 1274 (1913).

■ "[T]he procedural framework of international extradition gives to the demanding country advantages most uncommon to ordinary civil and criminal litigation." First National City Bank of New York v. Aristeguieta, 287 F.2d 219, 226 (2 Cir. 1960). Unique rules of "wide latitude," In re First National City Bank of New York, 183 F.Supp. 865, 871 (S.D.N.Y.1960), govern reception of evidence in Section 3184 hearings. Papers offered by the foreign county must be accepted. 18 U.S.C.A. § 3190. Deposition evidence inadmissible in a domestic preliminary hearing is admissible. 1967 *Wacker* 370 F.2d at 553. Hearsay evidence is admissible, United States ex rel. Karadzole v. Artukovic, 170 F.Supp. 383, 390 (S.D.Cal.1959).

■■ On the other hand, the accused cannot "introduce any evidence which would be admissible upon a trial under an issue of not guilty." Charlton v. Kelly, supra, 229 U.S. 447, 458, 33 S.Ct. 945, 948. This is because it "would defeat the whole object" of extradition if a complete trial were necessary prior to extradition. Glucksman v. Henkel, 221 U.S. 508, 512, 31 S.Ct. 704, 55 L.Ed. 830 (1911). Accordingly, an accused cannot introduce evidence in the nature of a defense, such as insanity, Charlton v. Kelly, supra, 229 U.S. 447, 462, 33 S.Ct. 945, or alibi, Desmond v. Eggers, 18 F.2d 503, 505–506 (9 Cir. 1927). Properly he may only introduce evidence rebutting probable cause. Collins v. Loisel, 259 U.S. 309, 316, 42 S.Ct. 469, 66 L.Ed. 956 (1922). A section 3184 hearing is not directly reviewable. Wacker v. Bisson, 348 F.2d 602, 607 (5 Cir. 1965), hereinafter 1965 *Wacker*.[16] It is collaterally reviewable by habeas corpus.[17] The scope of the remedy "is narrowly circumscribed." United States ex rel. Petrushansky v. Marasco, 215 F.Supp. 953, 956 (S.D.N.Y.1963). "The alleged fugitive * * * (on) *Habeas corpus* is * * * only to inquire whether the magistrate had jurisdiction, whether the offense charged is within the treaty and, * * *

15. The term 'magistrate' is used here in a general sense, referring to the judicial officer—whether state or federal—authorized to hold a hearing pursuant to the terms of 18 U.S.C.A. § 3184.

16. *But see* notes 12 and 13 of the 1965 *Wacker* case.

17. A section 3184 hearing is also reviewable by a declaratory judgment action. 28 U.S.C.A. § 2201. The scope of review is the same as in habeas corpus. 1965 *Wacker* 348 F.2d at 606.

whether there was any evidence warranting the finding that there was reasonable ground to believe the accused guilty." Fernandez v. Phillips, 268 U.S. 311, 312, 45 S.Ct. 541, 542, 69 L.Ed. 970 (1925).

Basically appellant wants what he would be entitled to if 18 U.S.C.A. § 3184 were applicable—a judicial hearing which is automatic, and which inquires into the same things a Section 3184 hearing does. In addition, appellant wants the court to require a finding not presently required in Section 3184 hearings: whether the accused was in the demanding country at the time the alleged crime was committed.

We hold that Sections 5081 through 5092 of Title 6 of the Canal Zone Code do not violate the due process clause.

■ In the framework of the special relationship between the Republic of Panama and the Canal Zone we think the long established procedure applicable to this case under the treaty and statutory provisions cannot be deemed invalid under the Constitution. They provide for the determination by the Chief Executive of the Canal Zone that the crime charged was committed and that the person to be extradited committed it.[18] This determination is subject to judicial review by habeas corpus in the United States District Court which may fully inquire into the evidentiary basis for the extradition order of the Governor. Thus, an individual's constitutional rights are protected when he is given an opportunity to seek judicial review of the administrative determination. A judicial review is guaranteed although no provision is made in the Canal Zone Code. Every individual, including those under an extradition order, can challenge the legality of his custody by petitioning for a writ of habeas corpus. The important thing is not when, but whether one can invoke the protection of the courts to insure conformity with the treaty and statutes. As amply demonstrated by events in the instant case, this procedure adequately protects the accused. Petitioner has had a complete judicial hearing on all issues that would have been pertinent to extradition proceedings pursuant to 18 U.S.C.A. § 3184. In our view, the Constitution requires no more.

■ The Due Process clause guarantees appellant the right to a hearing prior to extradition. That right may be satisfied by a statutorily required hearing, as is done in most United States international extradition cases, or, as was done here, by a full habeas corpus hearing. We noted earlier why the extradition provisions between the United States and Panama involving the Canal Zone are unique. We are not asserting that the Canal Zone's singular proximity to Panama authorizes Congress to dilute any person's constitutional rights. We do say that the above geographical factor explains why Congress has treated an extraditee such as appellant different from most. Affording appellant the right to a full habeas corpus review of his pending extradition does not deprive appellant of due process of law.

Affirmed.

## APPENDIX 1

§ 5081 *Delivery to Panama of offenders who seek refuge in Canal Zone*

All persons who have been condemned, prosecuted or accused before the courts of the Republic of Panama as authors or accomplices of crimes, transgressions or offenses against the laws of that Republic, who seek refuge in the Canal Zone, shall be, upon apprehension, taken into custody by the authorities of the Canal Zone and delivered to the authorities of the Republic of Panama, upon the demand of the Government of that Republic and compliance with the procedure prescribed in this subchapter.

§ 5082 *Discretion as to delivery of citizen of United States*

The Government of the Canal Zone may decline compliance with a demand

---

18. Since all offenses are covered, there is no need to determine whether the offense was within those delineated in the treaty.

of the Government of the Republic of Panama for the arrest and delivery to the authorities of that Republic of a fugitive from the justice of the Republic of Panama when the fugitive is a citizen of the United States. The discretion reserved shall be exercised by the Governor of the Canal Zone.

### § 5083 *Person under accusation or sentence in Canal Zone*

If the person whose arrest and delivery is demanded is accused of, or under sentence for, a crime, transgression or offense committed in the Canal Zone, he may not be delivered to the authorities of the Republic of Panama until he has been acquitted or pardoned, or has undergone his sentence pursuant to the laws of the Canal Zone.

### § 5084 *Prosecution for graver offense*

If, in the course of the proceedings in the courts of the Republic of Panama, in the case to which the arrest and delivery appertain, it appears that probable cause exists for believing the delinquent guilty of another and graver offense against the laws of the Republic of Panama than that which gave rise to the request for his apprehension and delivery, the Government of that Republic may prosecute the fugitive for such other offense after notice to that effect to the Government of the Canal Zone.

### § 5085 *Form of demand for arrest and delivery*

A demand for the arrest and delivery of a fugitive from the justice of the Republic of Panama, pursuant to the terms of this subchapter, will be complied with when made in writing and signed by the Minister for Foreign Affairs of the Republic of Panama, or by his direction, and presented to the Governor of the Canal Zone. If the demand is for a condemned and fugitive criminal, it shall be accompanied by a duly certified copy of sentence pronounced by a court of competent jurisdiction, and as far as possible, a description of the fugitive should be reclaimed.

### § 5086 *Telegraphic request for detention*

In case of urgency, where there are reasonable grounds for fearing that the fugitive may avoid apprehension, his detention may be asked for by telegraph.

### § 5087 *Procedure for arrest and detention.*

The arrest and detention shall be accomplished in the manner and by the officials prescribed by the laws of the Canal Zone.

### § 5088 *Term of detention*

Detentions authorized by this subchapter may not continue longer than 15 days, during which the procedure for securing the delivery of the fugitive to the authorities of the Republic of Panama shall be completed.

### § 5089 *Authority of agents of Panama receiving fugitive in Canal Zone.*

For the purpose of accomplishing the delivery of the fugitives apprehended and delivered in pursuance of this subchapter the Republic of Panama may send its agent or agents duly authorized to receive the fugitive into the territory of the Canal Zone, but the agent's action and authority shall be limited to receiving the fugitive at the point of departure for return to the Republic of Panama and, at the moment of departure and thenceforth, to exercising the necessary vigilance and restraint to prevent the escape of the person in custody.

### § 5090 *Duty of Canal Zone Authorities to facilitate return of fugitive*

It is the duty of the authorities of the Canal Zone on the line of transit to provide the persons charged with the conveyance of the fugitives so delivered with all the means necessary to prevent escape and to remove all unlawful obstacles that may hinder or delay the return of the

fugitives to the territory of the Republic of Panama.

§ 5091 *Delivery of objects found in fugitive's possession*

All papers and other objects found in the possession of the fugitive at the time of his detention that refer to the crime, transgression or offense of which the fugitive is accused or convicted shall be delivered to the Government of the Republic of Panama. These papers and objects shall be restored after the conclusion of the case if there are third parties who assert a right to or over them. The authorities of the Government of the Canal Zone may provisionally retain the objects and papers as long as they are required for use as evidence in any other case pending or contemplated in the courts of the Canal Zone, whether or not the case is related to the case wherein the demand for the apprehension and return of the fugitive originated.

§ 5092 *Expense of capture, detention and transportation of fugitive*

The expense of capture, detention and transportation of a fugitive from the justice of the Republic of Panama, shall be paid by that Republic; but such expenses shall not include compensation for the services of the judiciary, military or police authorities of the Government of the Canal Zone. 6 C.Z.C. § 5081–5092, 76A Stat. 554–555

## APPENDIX 2

This is to certify that the Isthmian Canal Convention signed at Washington, November 18, 1903 between the United States and Panama is in full force and effect with respect to those articles not superseded, abrogated or amended. Article 16 of this treaty has not been superseded, abrogated or amended.

/S/ Charles D. Bevans
Assistant Legal Advisor for
Treaty Affairs