**Elijah Ephraim JHIRAD, Plaintiff,**

v.

**Thomas E. FERRANDINA, United States Marshal, Southern District of New York, Defendant.**

**No. 72 Civ. 4026.**

United States District Court, S. D. New York.

Jan. 23, 1973.

Steinberg & Steinberg, New York City, for the Government of India; by Louis Steinberg and Edwin A. Steinberg, New York City, of counsel.

William Bronner, Asst. U. S. Atty., for defendant Ferrandina.

## MEMORANDUM AND ORDER

DUFFY, District Judge.

This case comes to this Court as an application by petitioner, Jhirad, for a writ of habeas corpus, attacking the jurisdiction of a United States magistrate to determine the appropriateness of extraditing Jhirad to India.

The Government of India has sought the extradition, pursuant to 18 U.S.C. § 3182, of Jhirad, who is a native Indian now a resident alien in this country. It is alleged that while Judge Advocate General of the Indian Navy, Jhirad embezzled large sums of money from a naval fund.

Normally, the procedure in an extradition matter, as set forth in 18 U.S.C. § 3184, involves the issuance of a warrant upon complaint and then a hearing before a magistrate, who determines whether there is sufficient evidence to sustain the charged offense under the applicable treaty of extradition. The determination of a magistrate is not directly appealable. Sayne v. Shipley, 418 F.2d 679 (5th Cir. 1969), cert. den., 398 U.S. 903, 90 S.Ct. 1688, 26 L.Ed.2d 61 (1970). The only method of attacking such a determination is by a petition for a writ of habeas corpus. Usually, such a writ is sought after a hearing by the magistrate. Here, however, petitioner has brought this petition before the hearing could take place. In several cases, including Wright v. Henkel, 190 U.S. 40, 23 S.Ct. 781, 47 L.Ed. 948 (1903) and Ivancevic v. Artukovic, 211 F.2d 565 (9th Cir. 1954), cert. den., 348 U.S. 818, 75 S.Ct. 28, 99 L.Ed. 698 (1954), petitions have been heard prior to a hearing where there were unusual circumstances.

Petitioner has unfortunately sought to circumvent the normal orderly

Tenzer, Greenblatt, Fallon & Kaplan, New York City, for plaintiff; by Edward Sadowsky and Stacy L. Wallach. New York City, of counsel.

extradition procedures, and the Court wishes to strongly discourage this premature use of the writ. However, this case has been in limbo for nearly five months after the untimely death of the late Judge McLean, and the Court feels constrained to determine the merits of petitioner's claims.

■ At the outset, respondent has suggested that a writ of habeas corpus under 28 U.S.C. § 2241 will not lie because petitioner, free on bail, is not "in custody" as the statute requires. Until recently, the "in custody" requirement meant that a prisoner would have to be incarcerated before he could use the writ of habeas corpus. However, the "in custody" requirement has recently been interpreted with greater latitude. In Jones v. Cunningham, 371 U.S. 236, 83 S.Ct. 373, 9 L.Ed.2d 285 (1963), the Supreme Court held that a prisoner on parole under the custody and control of a parole board is "in custody" within the meaning of 28 U.S.C. § 2241. Likewise, five years later the Supreme Court in Carafas v. LaVallee, 391 U.S. 234, 88 S.Ct. 1556, 20 L.Ed.2d 554 (1968) determined that the fact that a petitioner's sentence had expired while his petition for the writ was on review, did not defeat jurisdiction under the Federal statute. Subsequently, the lower courts have expanded the situations in which jurisdiction to grant a writ of habeas corpus will lie. In Marden v. Purdy, 409 F.2d 784 (5th Cir. 1969) it was held that a state prisoner free on bond could seek a writ of habeas corpus and in 1970 the same court decided that release on appeal bond was "in custody" for Federal jurisdictional requirements. Capler v. City of Greenville, 422 F.2d 299 (5th Cir. 1970).

■ Two district courts in this Circuit have echoed the new approach to the "in custody" requirement. Judge Bryan in Duncombe v. New York, 267 F.Supp. 103 (S.D.N.Y.1967) by way of dictum suggested that a person released on bail is legally in custody for the purpose of the habeas statute. In U.S. ex rel. Smith v. DiBella, 314 F.Supp. 446 (D.Conn.1970) the Court held that a petitioner released on his own recognizance was in custody for the purposes of the Federal habeas corpus statute. The underlying reasoning in all of these decisions is that to fall within 28 U.S.C. § 2241, one's liberty of movement must be limited in some substantial way. Though petitioner Jhirad is out on bail, the Court finds that the restrictions on his freedom implicit in his being on bail are such as to come within the import of the statute. Therefore, the Court has power to entertain this application.

■ The scope of inquiry open to a Federal District Court when deciding a writ of habeas corpus in an extradition case is very narrow, being limited to the following questions:

1) whether the magistrate has jurisdiction;

2) whether the evidence produced at the hearing showed a reasonable ground to believe the accused guilty; and

3) whether the offense alleged is a treaty offense.

Wacker v. Bisson, 348 F.2d 602 (5th Cir. 1965); Sayne v. Shipley, 418 F.2d 679 (5th Cir. 1909), cert. den., 398 U.S. 903, 90 S.Ct. 1688, 26 L.Ed.2d 61 (1970); U. S. ex rel. Petrushansky v. Marasco, 215 F.Supp. 953 (S.D.N.Y.1963), aff'd, 325 F.2d 562 (2nd Cir. 1963), cert. den., 376 U.S. 952, 84 S.Ct. 969, 11 L.Ed.2d 971 (1964), and Application of D'Amico, 185 F.Supp. 925 (S.D.N.Y.1960), appeal denied, 286 F.2d 320 (1961).

■ Since there has been no hearing in this case, we are concerned only with the jurisdiction of the magistrate and whether the offense charged is a treaty offense. 18 U.S.C. § 3184, Factor v. Laubenheimer, 290 U.S. 276, 54 S.Ct. 191, 78 L.Ed. 315 (1933). Of course, the threshold question is whether an extradition treaty exists.

■ The United States Marshal, Ferrandina, the nominal respondent, and the Government of India, the real respondent to this action, argue that the extradition treaty of December 22, 1931,

47 Stat. 2122, between the United States and Great Britain, serves to support jurisdiction in this case. This Treaty in Article 14 stated that Great Britain could accede to the Treaty on behalf of certain listed territories, among which was India. On March 9, 1942, the Treaty was made effective as to British India. For the following reasons this Court holds that the Treaty of 1932 is valid and of continuing force between the Governments of India and the United States, and will support the jurisdiction of the magistrate to hear the evidence againt Jhirad.

■ Whether an extradition treaty exists is an issue with major foreign policy implications and one which does not easily fall within the sphere of the Judicial Branch of Government. Thus, it is that courts have given great weight to the position taken by the Executive Branch concerning the validity of extradition treaties. In Sayne v. Shipley, 418 F.2d 679 (5th Cir. 1909), cert. den., 398 U.S. 903, 90 S.Ct. 1688, 26 L.Ed.2d 61 (1970), the Fifth Circuit said:

> "Because we recognize that the conduct of foreign affairs is a political, not a judicial function, such advice [from the Executive Branch], while not conclusive on this Court, is entitled to great weight and importance." (418 F.2d at 684)

In the case at bar, the United States, through the Acting Secretary of State, certified on August 14, 1972, that "the treaty of extradition between the United States and India is therefore considered a good subsisting and binding convention between the United States and India." Further, the Executive Branch strongly indicated its continuing affirmation of the Treaty when (in July of 1967), in conjunction with a prior extradition between the United States and India, notes were exchanged between the two Governments.

■ The position of the Executive Branch, though persuasive, is not conclusive. The Court must evaluate the facts concerning the Treaty on its own.

Petitioner argues that the Treaty of 1931, under which extradition is sought, though made applicable to British India in 1942, did not survive the creation of the Republic of India in 1950.

■ As with much of international law, the question of treaty succession is muddled. Yet, it seems generally agreed that some rights and duties do devolve on the new country, particularly those rights and duties locally connected to the area gaining independence. See Oppenheim, International Law, Vol. 1 at 157–158.

■ Particularly in reference to emerging nations, the weight of authority supports the view that new nations inherit the treaty obligations of the former colonies. As one authority has said:

> "There is a tendency in the direction of continuity of treaties upon independence of colonial territories which has been evident for some time respecting multi-lateral legislative conventions and a fairly wide spectrum of bilateral treaties." (O'Connell, State Succession in Municipal Law and International Law, 1967, at 113)

■ In Ivancevic v. Artukovic, 211 F.2d 565, (9th Cir. 1954), cert. den., 348 U.S. 818, 75 S.Ct. 28, 99 L.Ed. 698 (1954), the Ninth Circuit decided that an extradition treaty made between the United States and the Kingdom of Serbia survived the creation of the Federal People's Republic of Yugoslavia. Though relying in large measure on the view of the Chief Executive, the Court also emphasized that there was sufficient continuity between the first Government and the second, even though there was not geographic identity. Applying this principle of continuity, it is reasonable to find that the Republic of India inherited these treaties. With the exception that Pakistan was separated from British India, there was geographical identity between India in 1946 and 1950. Further, as part of the creation of the Dominion of India, the Indian Government agreed to take an assign-

ment of all treaties signed on its behalf by Great Britain. Therefore, the Treaty of 1931 was in effect in 1946. The subsequent change to a Republic was certainly of only evolutionary nature; thus the Treaty would appear to survive.

Jhirad relies heavily on State of Madras v. Menon, (1955) 1 S.C.R. 280. The Supreme Court of India in that case held that an act of the British Parliament, (the Fugitive Offenders Act of 1881) which set conditions for extradition among British possessions, was no longer valid after the creation of the Republic in 1950. Reliance on this case is misplaced. The basic feature of the Fugitive Offenders Act was that it made for simplified procedures among British possessions. The Fugitive Offenders Act was an internal statute while the Treaty of 1931 was an external act whereby India as an international person gained rights and obligations vis-a-vis another international person. Further, a recent opinion of the Supreme Court of India in West Bengal v. Kishore, (1969) 3 S.C.R. 320, raised serious questions as to the continuing appropriateness of relying on the *Menon* decision.

Lastly, the United States Supreme Court has held that the actions of the two countries involved regarding an extradition treaty are of great importance in deciding a treaty's validity. Terlinden v. Ames, 184 U.S. 270, 22 S.Ct. 484, 46 L.Ed. 534 (1902). Both the Government of India and the Government of the United States have been unequivocal in relying on the validity of the Treaty of 1931 and in the past there have been extraditions from both countries.

Mindful of the advice of the Executive Department, the actions of both governments and relying on the historical continuity from British India to the Republic of India, this Court holds that the Treaty of 1931 is validly existing between India and the United States.

The second issue raised by the petition for habeas corpus is whether the crime charged is an extraditable offense.

Petitioner, Jhirad, has been charged with the crime of Breach of Trust of a Public Servant, § 409 of the Indian Penal Code (IPC). The IPC defines a criminal breach of trust in Section 405 as occurring when

" . . . whoever, being entrusted with property . . . dishonestly misappropriates or converts to his own use that property in violation of any direction of law . . ."

After stating this general definition in Section 405, the IPC goes on in subsequent sections to enumerate differing penalties based on the status of the entrustee. Section 409 is merely a statement of a specific penalty for the general crime contained in Section 405. Though called "breaches of trust", the crimes defined by Sections 405 and 409 are in essence crimes of embezzlement. They satisfy the classical definition of embezzlement stated by Blackstone in his *Commentaries:*

"The fraudulent appropriation to his own use or benefit of property or money entrusted to him by another, by a clerk, agent, trustee, public officer or other person acting in a fiduciary character." 4 Blackstone's *Commentaries,* 230, 231.

 Article Three of the Treaty of 1931 lists the extraditable offenses and includes larceny and embezzlement in clause 16 and fraudulent conversion in clause 17. The courts have set a standard of liberal interpretation of treaty language. As the Supreme Court said in Factor v. Laubenheimer, 290 U.S. 276, 54 S.Ct. 191, 78 L.Ed. 315 (1933), "extradition treaties are to be liberally, not strictly, construed." From the general lack of particularity and specificity of the crimes listed in Article Three, it is evident that the intention was to describe the crimes in the most general and inclusive terms. In light of this intention and the standard of interpretation set by the Supreme Court in the *Factor* case, the Court finds the crime charged is included within the ambit of clause 16 of the Treaty.

In Wright v. Henkel, 190 U.S. 40, 23 S.Ct. 781, 47 L.Ed. 948 (1903), the Supreme Court, while deciding whether an extraditable offense was stated, said:

"The general principle of international law is that in all cases of extradition the act done on account of which extradition is demanded must be considered a crime by both parties." 190 U.S. at 58, 23 S.Ct. at 785.

This apparently was the law until Factor v. Laubenheimer, *supra,* 290 U.S. 276, 54 S.Ct. 191, 78 L.Ed. 315. In that case the Court indicated that the question of whether the crime charged must be a crime in the asylum country was a matter of treaty interpretation. The Court went on to indicate that at most all that was necessary was that the offense charged was recognized by the jurisprudence of both countries. There is no requirement in Article Three of the Treaty that larceny or embezzlement be crimes in the asylum country. Indeed, the Treaty lists only one offense which must be a crime in both countries to be extraditable, and that is accessorial conduct of any kind. It follows, therefore, that the Treaty does not require that the crime charged be explicitly a crime in the place of asylum.

Even if it were necessary for extradition that there be mutual criminality, it seems quite clear that the acts alleged fall within the ambit of liability of § 155.05 of the New York Penal Law (McKinney's Consol.Laws, c. 40 1967) which makes a wrongful taking or withholding of property from its owner a crime. It specifically includes embezzlement, without regard to the status of the person committing such act. It seems clear that the offense charged is within those listed as being extraditable.

Also, in determining whether the offense charged against petitioner, Jhirad, is extraditable, the Court must determine whether the Treaty sets any time limitations on extradition and, if so, whether they have been complied with. Merino v. United States Marshal, 326 F.2d 5 (9th Cir. 1963), cert. den.,

377 U.S. 997, 84 S.Ct. 1922, 12 L.Ed.2d 1046 (1964). Under Article Five of the Treaty of 1931, otherwise permissible extradition cannot take place if the passage of time has caused an exemption from prosecution or punishment "according to the laws of the High Contracting Party applying or applied to." Thus, both United States law, as well as Indian law, must be considered to determine whether the extradition is time barred. See Hatfield v. Guay, 87 F.2d 358 (1st Cir. 1937), cert. den., 300 U.S. 678, 57 S.Ct. 669, 81 L.Ed. 883 (1937), (construing the same Treaty).

Given that the Treaty commands reference to the law of the United States, should it be Federal law or State law? It has been suggested that the New York Statute of Limitations should be applied. Cited in support of this contention is In re Mylonas, 187 F. Supp. 716 (N.D.Ala.1960). The *Mylonas* decision stands as a lone example of this approach. If extradition were to be barred by the capricious location among the states of the person sought to be extradited, it strikes this Court that the basic intention of international treaties of extradition, namely uniform, regularized extradition between nations, would be thwarted. Because of this clear over-riding Federal interest in treaties of extradition, we will look to Federal law regarding the limitations question. *Cf.* Garcia-Guillern v. U. S., 450 F.2d 1189 (5th Cir. 1971), cert. den. 405 U.S. 989, 92 S.Ct. 1251, 31 L.Ed.2d 455 (1972).

The Federal Statute of Limitations with regard to non-capital offenses is 18 U.S.C. § 3282. In relevant part, the statute states, "no person shall be prosecuted . . . or punished for any offense, not capital, unless the indictment is found or the information is instituted within five years next after such offense shall have been committed." The alleged series of offenses for which petitioner is charged, took place from 1959 through 1961. To be within the five year period under Section 3282, prosecution would have to have been brought by

September 26, 1966 at the latest since the last alleged transaction occurred on the 27th of September 1961. Petitioners and Respondents agree that prosecution in this case was not begun until October of 1968, well after the five year period had expired.

Under 18 U.S.C. § 3290 the five year limitations period does not extend to persons "fleeing from justice". Jhirad left India on July 26, 1966, which, if it constituted a "fleeing from justice" would have tolled the statute as to those offenses occurring less than five years before his departure, namely, the alleged transactions on July 27, 1961, September 25, 1961, and September 27, 1961. Petitioner argues that mere absence from the place of the offense will not suffice to prove "fleeing from justice", rather, an intention to avoid arrest or prosecution must be shown.

■ Turning to the construction of 18 U.S.C. § 3290, the Circuits are divided as to whether to be fleeing from justice, one must intend to escape prosecution. The Fifth Circuit, over a vigorous dissent, held in B. M. Donnell v. U. S., 229 F.2d 560 (5th Cir. 1956) that intent must be proved and that mere absence was not sufficient to show "fleeing from justice". However, two other Circuits have held that mere absence from the jurisdiction was sufficient. In McGowen v. U. S., 70 App.D.C. 268, 105 F. 2d 791 (D.C.Cir.1939), cert. den., 308 U.S. 552, 60 S.Ct. 98, 84 L.Ed. 464 (1939), the Court held that in the Statute of Limitations 18 U.S.C. § 583, the predecessor of Section 3290, "fleeing from justice" meant one who is gone from the jurisdiction without regard to intent. Likewise, the Eighth Circuit, in construing Section 583 held that to be fleeing, all that was necessary was to have left the jurisdiction of the crime after its commission. Though not of great weight in determining what the language of Section 3290 means, it is worth noting that all of the cases construing the phrase "fleeing from jus-

tice" in the extradition statute 18 U.S.C. § 3182 have held that fleeing is proved by mere absence. See Appleyard v. Massachusetts, 203 U.S. 222, 27 S.Ct. 122, 51 L.Ed. 161 (1906) and Roberts v. Reilly, 116 U.S. 80, 6 S.Ct. 291, 29 L.Ed. 544 (1885). This Court finds that petitioner was fleeing from justice by his mere absence from India in 1966. In addition to the case law supporting this view, the Court is persuaded by the fact that the alleged offenses of petitioner are of a type which are likely to go undiscovered for long periods, thus delaying prosecution and making this type of action easily time-barred. If the Court were to decide that fleeing from justice occurred only when there was a finding of an intention to avoid prosecution, the Court would be put in a position of finding the facts surrounding a crime which has occurred in another country. We are reluctant to assume such a role. As to the last three alleged offenses, the Statute of Limitations as set out in 18 U.S.C. § 3290 would not bar extradition.

■ Article Five of the Treaty mandates that the Court also look to see if the law of India bars this action because of delay. India has no Statute of Limitations, but rather applies a case law principle of unreasonable and unfair delay. Since the Indian rule is a case-by-case approach, dependent upon the facts of each case, it would be very difficult for this Court to suggest that the time period here is so unreasonable as to require barring this action under Indian law. The facts as presented to the Court do not compel a finding of unreasonableness; on the contrary, they indicate careful investigation on the part of the Indian Government, which of necessity took some time.

The Court finds that the magistrate has jurisdiction and that the last three offenses alleged are extraditable. The Court does not decide whether or not all of the alleged offenses might, in fact, constitute one extraditable offense as we find such a determination to be unneces-

sary. The stay of the magistrate's hearing is hereby vacated.

The petition for writ of habeas corpus is denied.

So ordered.