Guy SABATIER

v.

Sheriff Edward K. DAMBROWSKI, Warden, New Bedford House of Corrections, Attorney General of the United States.

Civ. A. No. 78–184.

United States District Court,
D. Rhode Island.

July 7, 1978.

Robert B. Mann, Providence, R. I., for petitioner.

Constance L. Messore, Asst. U. S. Atty., Providence, R. I., for respondents.

## OPINION

FRANCIS J. BOYLE, District Judge.

Petitioner has filed this Petition pursuant to the provisions of 28 U.S.C. §§ 2241 *et seq.* for a Writ of Habeas Corpus. He alleges that he is presently being held illegally without bail, at the request of the Canadian Government that he be extradited to that country for the alleged commission of offenses there.

This Court issued an Order for Petitioner's arrest on September 13, 1977. The request for extradition was initiated March 13, 1978. Upon hearing pursuant to 18 U.S.C. § 3184 on April 3, 1978, the Magistrate found probable cause to believe that Petitioner had committed the offenses for which extradition is sought, and ordered that Petitioner continue to be held without bail pending his certification of this issue to the Secretary of State. On April 6, 1978, the Magistrate issued a Certification of Extraditability and Order of Commitment, directing that Petitioner be committed, without bond, to the custody of the United States Marshal pending the issuance of an extradition warrant by the Secretary of State. Petitioner filed this Petition for a Writ of Habeas Corpus on April 13, 1978. On April 14, 1978, the Magistrate, pursuant to Petitioner's Motion for Stay, entered an Order restraining Respondents from removing Petitioner from this jurisdiction pending a hearing on this Petition.

Petitioner contends that his detention is illegal for reasons which include the following:

(1) The alleged basis for detention of the Petitioner is a 1976 Treaty of Extradition between the United States and Canada, which is inapplicable to Petitioner's situation, and there is no valid extradition treaty between the United States and Canada.

(2) Petitioner was denied the opportunity for a speedy adjudication of the request by the Canadian Government for his extradition.

(3) There is no basis in law for the extradition of the Petitioner for the crime of causing bodily harm with intent to endanger life because such a crime is not identified as a crime for which a person may be extradited in any treaty between the United States and Canada.

(4) There was no probable cause to commit the Petitioner on a robbery charge.

(5) The decision whether to extradite Petitioner had already been determined by the Fifth District Court of the State of Rhode Island, and the doctrines of *res judicata* and collateral estoppel bar a relitigation of the issue.

(6) The denial to Petitioner of a request for discovery deprived Petitioner of the due process of law.

(7) There is no complete transcript of the extradition hearing, for reasons that it was recorded by electronic means and the second of two tapes of the proceeding is "completely inaudible."

The Respondents have filed a Motion to Dismiss for reason that "Petitioner has not stated a claim upon which relief can be granted." The Court will consider the Motion to Dismiss to be a return in accord with the provisions of 28 U.S.C. § 2243. *See Swihart v. Johnston,* 150 F.2d 721 (9th Cir. 1945), *cert. denied,* 327 U.S. 789, 66 S.Ct. 803, 90 L.Ed. 1016 (1946).

■ The scope of review of a Certification of Extraditability on a Petition for Habeas Corpus is narrowly circumscribed. *In re D'Amico,* 177 F.Supp. 648 (S.D.N.Y. 1959). The reviewing Court is permitted to consider only the following: (1) whether the Magistrate had jurisdiction to determine Petitioner's extraditability; (2) whether there was in effect a treaty on extradition between the demanding and asylum countries; (3) whether the crime with which Petitioner is charged by the demanding country is a crime identified as an extraditable offense under a treaty in effect between the two countries; and (4) whether there was probable cause for the Magistrate to believe that the individual before him was the person who committed the crimes which are charged and that the alleged offenses were in fact committed, i. e. competent legal evidence warranting finding that there was reasonable ground to believe prisoner guilty. *Fernandez v. Phillips,* 268 U.S. 311, 45 S.Ct. 541, 69 L.Ed. 970 (1925); *Sayne v. Shipley,* 418 F.2d 679 (5th Cir. 1969), *cert. denied,* 398 U.S. 903, 90 S.Ct. 1688, 26 L.Ed.2d 61 (1970); *Jimenez v. Aristeguieta,* 311 F.2d 547 (5th Cir. 1962); *Bernstein v. Gross,* 58 F.2d 154 (5th Cir. 1932); *Collier v. Vaccaro,* 51 F.2d 17 (4th Cir. 1931).

Petitioner's first basis for his allegation of illegality, that there is no treaty on extradition between the United States and Canada which would apply to the offenses here alleged, is unfounded.

On March 22, 1976, the *Treaty on Extradition Between the United States and Canada,* TIAS 8237, was ratified and thereby became effective. The Schedule of extraditable offenses as set out in that Treaty are not germane to this action. *See Galanis v. Pallanck,* 568 F.2d 234 (2nd Cir. 1977). However, Article 18(2) of the Treaty is applicable. That Article provides:

This Treaty shall terminate and replace any extradition agreements and provisions on extradition in any other agreement in force between the United States and Canada; except that the crimes listed in such agreements and committed prior to entry into force of this Treaty shall be subject to extradition pursuant to the provisions of such agreements.

The offenses with which Petitioner is charged are alleged to have been committed in 1975.

■ Respondents assert that Article X of the Webster-Ashburton Treaty of 1842 between Great Britain and the United States, 8 Stat. 572, TS 119, 12 Bevans 82, as supplemented by six (6) other agreements, have governed extradition between the United States and Canada up to the time of the present treaty. *See Galanis* at 236. Petitioner argues that the present treaty incorporates only agreements "between the United States and Canada," and that the Webster-Ashburton Treaty and supplementing conventions, were not agreements between the United States and Canada, but between this country and Great Britain. However, "the weight of authority supports the view that new nations inherit the treaty obligations of the former colonies." *Jhirad v. Ferrandina,* 355 F.Supp. 1155, 1159 (S.D. N.Y.1973), *rev'd on other grounds,* 486 F.2d 442 (2nd Cir. 1973). In light of this trend and considering the substantial political and geographical identity of Canada as a Dominion both before and after the Statute of Westminster, the Webster-Ashburton Treaty and supplementing conventions constitute prior agreements on extradition between the United States and Canada. Arti-

cle X of the Webster-Ashburton Treaty specifically establishes robbery as an extraditable offense.

Petitioner contends that the Magistrate lacked probable cause for finding him extraditable for robbery. He asserts that the indictment is deficient as a matter of Canadian law in that it failed to allege the purpose of the violence or threats alleged to have been used. He cites *Regina v. Livingstone*, [1976] 2 W.W.R. 349, 350 (B.C. S.Ct.) as support for this proposition. There the court held that the order for committal for trial was a nullity as to the robbery charge, because the information did not allege the purpose of the violence. Petitioner, however, has confused two distinct provisions of Article 302 of the Canadian Criminal Code:

> Every one commits robbery, who
> (a) steals, and for the purpose of extorting whatever is stolen or to prevent or overcome resistance to the stealing, uses violence or threats of violence to a person or property;
> (b) . . .
> (c) . . .
> (d) steals from any person while armed with an offensive weapon or imitation thereof.

■ Defendant, in *Livingstone,* was charged under 302(a), while Petitioner here was charged under 302(d). As no allegation of purpose is necessary under this latter provision, Petitioner's argument on this point must fail.

■ Petitioner has also been charged with violation of Article 228(b) of the Canadian Criminal Code:

> Every one who, with intent . . . to endanger the life of any person . . . discharges a firearm, air gun or air pistol at or causes bodily harm in any way to any person . . . is guilty of an indictable offense and is liable to imprisonment for fourteen years.

Petitioner argues that such offense is not identified as an extraditable offense in any treaty provision or other agreement on extradition between the United States and Canada. The Court has reviewed Article X of the Webster-Ashburton Treaty and all supplementing conventions. The offense described in Article 228(b) of the Canadian Criminal Code is not an extraditable offense.

Article I of the Treaty of 1908, *Treaty Between the United States and Great Britain Concerning Reciprocal Rights for United States and Canada in the Conveyance of Prisoners and Wrecking and Salvage,* 35 Stat. 2035, TS 502, 12 Bevans 314, makes reference to the offense of "Assault with intent to commit grievous bodily harm." Respondents rely on this language and the policy of liberal construction of treaties for the proposition that the crime of "Causing Bodily Harm With Intent," Article 228(b), if construed liberally, is the equivalent of the offense set forth in Article I of the 1908 Treaty. Assuming *arguendo* that the language of the Treaty provision and that of the Canadian Criminal Code are equivalent, does not dispose of the issue. Reading the Treaty as a whole, it appears that "Assault with intent to commit grievous bodily harm" was not intended to be established as an extraditable offense.

The critical language of Article I is preceded by a provision that permits an officer who is conveying a prisoner through the United States, to "keep such person in his custody, and in case of escape (to) recapture him." This provision applies "only to persons charged with or convicted of offences of the following descriptions:

> 1. Offences for which extradition is at the time authorized by a treaty in force between the United States and Great Britain.
> 2. Assault with intent to commit grievous bodily harm.
> 3. Assault upon an officer of the law in the execution of his duty."

It is clear that at the time of this Treaty, the offense set out in paragraph two, *supra,* was not an offense "for which extradition is . . . authorized." Otherwise, there would have been no need to set out the offense in a separate paragraph. The provision clearly relates to the right of recapture in the United States by an officer of

the Dominion of Canada and the right of recapture in the Dominion of Canada by an officer of the United States. There has not been a supplementary convention which has established the offense as extraditable. The Magistrate, therefore, erred in certifying the Petitioner as extraditable for violation of Article 228(b) of the Canadian Criminal Code.

Petitioner also claims that the Magistrate was without jurisdiction to determine the question of extraditability, as the decision whether to extradite had already been determined by the Fifth District Court of the State of Rhode Island in his favor. Since that court was without subject-matter jurisdiction to determine the question of extraditability, the principles of collateral estoppel and *res judicata* are not applicable. See *Commissioner v. Sunnen,* 333 U.S. 591, 597, 68 S.Ct. 715, 92 L.Ed. 898 (1948); *Goldsmith v. M. Jackman & Sons, Inc.,* 327 F.2d 184 (10th Cir. 1964). The jurisdictional statute, though it provides for determination of extraditability by a "judge of a court of record of general jurisdiction of any State," does not provide for determination by a court of limited jurisdiction. 18 U.S.C. § 3184.

Petitioner's claim that he was denied due process of law by reason of being denied a speedy adjudication of his extraditability also must fail. The Sixth Amendment's guarantee to a speedy trial is "limited by its terms to criminal prosecutions . . . (It) is inapplicable to international extradition proceedings," which are not criminal in nature, but *sui generis. Jhirad v. Ferrandina,* 536 F.2d 478, 485, note 9 (2nd Cir. 1976), *cert. denied,* 429 U.S. 833, 97 S.Ct. 97, 50 L.Ed.2d 98 (1976). *Cf. Middendorf v. Henry,* 425 U.S. 25, 96 S.Ct. 1281, 47 L.Ed.2d 556 (1976) (holding a summary court martial was not a criminal prosecution for purposes of the Sixth Amendment right to counsel or for Fifth Amendment due process consideration).

Petitioner also claims error in that the Magistrate denied his request for discovery of documents and other papers relating to the history of the 1976 extradition treaty between the United States and Canada. He asserts that this denial deprived him of due process of law and of his rights as provided by statute, 18 U.S.C. §§ 3181 *et seq.* "[U]nder the traditional extradition standards discovery is limited and discretionary." *Jhirad v. Ferrandina,* 377 F.Supp. 34, 37 (S.D.N.Y.1974). Petitioner's request for discovery concerns a legal issue; namely, the existence of a valid treaty on extradition between the United States and Canada. As a matter of law, the issue was a legal issue which the Magistrate was required to determine. The Magistrate did not abuse his discretion in denying Petitioner's request.

Petitioner's final argument is that because of an incomplete transcript of the extradition proceedings, the finding of extraditability should be reversed, or that at the very least, there should be a *de novo* hearing on that question. Petitioner posits his argument on alleged violation of the statute, 18 U.S.C. § 3184. This statute provides in relevant part that the hearing judge or magistrate, if he "deems the evidence sufficient to sustain the charge under the provisions of the proper treaty or convention . . . shall certify the same, together with a copy of all the *testimony* taken before him, to the Secretary of State." (Emphasis supplied.) Counsel for Petitioner has represented to this Court that Petitioner did not testify at the extradition hearing before the Magistrate, and that the entire proceeding was limited to counsel's legal argument. Thus, despite the lack of a complete transcript, the requirements of the statute are met. Additionally, the Magistrate's Certification of Extraditability sets out his findings from which the Secretary would be enabled to make a final and proper determination on whether to extradite.

The Petitioner's request for a Writ of Habeas Corpus with respect to the offense of "Causing bodily harm with intent," is granted. Petitioner's request for the Writ with respect to the offense of robbery is denied.

So Ordered.