Oliver L. VARDY, Petitioner-Appellant,

v.

UNITED STATES of America and Donald Forscht, United States Marshal in and for the Southern District of Florida, Respondents-Appellees.

No. 75–2180.

United States Court of Appeals, Fifth Circuit.

March 26, 1976.

Rehearing and Rehearing En Banc Denied June 9, 1976.

See 533 F.2d 310.

Fla., B. Franklin Taylor, Jr., James P. Morris, Murray R. Stein, John L. Murphy, Attys., Acting Chief, Gov. Reg. Sec., Washington, D. C., for respondent-appellee.

Before WISDOM, COLEMAN and GEE, Circuit Judges.

GEE, Circuit Judge:

This case involves a fact situation that can only be described as bizarre, even when compared to other examples of the increasingly frequent and frequently unusual litigation involving international cooperation in law enforcement. Appellant's sole argument is purely legal, very technical, highly ingenious, and totally without merit. We affirm the district court's denial of habeas corpus relief.

Appellant is an alien with a home in Florida; he is a permanent resident of the United States. He has been arrested and is free on bond in connection with a request by Canada, his country of origin, to extradite him to stand trial for his activities as a government official in Canada prior to his emigration to the United States. The extradition proceeding has been pending since January 1974, but no determination of extraditability has been made. This appeal is from the dismissal of Vardy's collateral habeas corpus action. Appellant's argument is that there is no subject matter jurisdiction in the extradition proceeding because he is not "found" in the United States within the meaning of the controlling extradition treaty between the United States and Canada.[1] This argu-

Donald I. Bierman, Miami, Fla., for petitioner-appellant.

Robert W. Rust, U. S. Atty., William Northcutt, Jr., Asst. U. S. Atty., Miami,

---

1. The operative treaty provision, 8 Stat. 572 art. X (1842), states in pertinent part:

   It is agreed that *Her Britannic Majesty and the United States shall, upon mutual requisitions* by them or their ministers, officers, or authorities, respectively made, *deliver up to justice all persons who,* being charged with the crime of murder, . . . piracy or arson, or robbery, or forgery, or the utterance of forged paper, committed within the jurisdiction of either, shall seek an asylum or *shall be found within the territories of the other;* . . . . (emphasis added).

   The treaty has been supplemented several times in ways not relevant to this case; the locations of these supplements can be found in 18 U.S.C.A. § 3181 (Supp.1976). A new treaty replacing this collection of agreements with a unified document has been ratified. 121 Cong. Rec. 20,861–62 (daily ed. Dec. 1, 1975). Since

ment is based on appellant's interpretation of the events of January 1974, and we are obliged to summarize those events in some detail.

Appellant was arrested in Panama by local officials on January 22, 1974. Accompanied by an armed Panamanian policeman, he flew from Panama to Miami, Florida, on January 25, 1974. The government asserts that this was a voluntary journey, while appellant characterizes it as a "kidnapping," illegal under Panamanian and/or international law. We do not resolve this dispute because we deem it irrelevant to the issue before us. In any event, the trip to Miami was apparently only the first leg of a journey which was intended to return Vardy to Canada. Vardy never took the second leg because his attorney in Miami learned his itinerary in time to interrupt the journey by having the United States Marshal take custody of Vardy in the Miami airport pursuant to a petition for habeas corpus. Proceedings for extradition from the United States to Canada were instituted only after Vardy persuaded the United States courts to interrupt his transfer from Panama to Canada.

■ Despite its success in the district court, the government now argues that the district court lacked jurisdiction to entertain Vardy's petition for habeas corpus, based on the interpretation of the extradition treaty between the United States and Canada, prior to a determination in the extradition proceeding itself. The government relies on *Jhirad v. Ferrandina,* 355 F.Supp. 1155 (S.D.N. Y.), *rev'd on other grounds,* 486 F.2d 442 (2d Cir. 1973). In that case, the court heard a challenge to an extradition magistrate's jurisdiction prior to a determi-

nation in the extradition proceeding, but it expressed reluctance to do so and indicated that "unusual circumstances" were required to justify such a procedure. We strongly agree that deferring habeas review until there is a determination of extraditability is a preferable procedure. Indeed, and in view of our disposition of this appeal, we urge the district court and the magistrate to take all steps necessary to reach an *immediate* determination of Vardy's extraditability. However, we do not believe that a prior determination of extraditability is a jurisdictional prerequisite to habeas relief.[2] Moreover, the same factor which motivated the court in *Jhirad* to exercise habeas jurisdiction, an excessive and confusing delay in the extradition proceedings, is also present in this case.

■ The government bolsters its argument that habeas relief is premature by contending that this result is mandated by our unpublished disposition of a prior appeal in this case, *Vardy v. United States,* No. 74–8305 (5th Cir., Sept. 24, 1974). In that case, we denied leave to appeal from an interlocutory order and indicated that the district court erred in purporting to exercise direct review of the magistrate's action in the extradition proceeding. The procedural posture of this appeal is different, and nothing in our disposition of the earlier appeal indicates that habeas is unavailable until a final decision is reached in the extradition proceeding. Since the exercise of habeas jurisdiction in this case was permissible and appropriate, we reach the merits of appellant's argument.

■ Mindful of the rule that extradition treaties should be construed liberally,[3] we have no difficulty in concluding

it also provides that the United States' obligation to extradite embraces "persons found in its territories," S.Exec.Doc. G, 93d Cong., 2d Sess. 1 (1974), its entry into force upon exchange of the instruments of ratification changes neither the issue nor the result in this case.

2. *See, e. g., Wright v. Henkel,* 190 U.S. 40, 23 S.Ct. 781, 47 L.Ed. 948 (1903), in which habeas

was used to inquire into the jurisdiction of the magistrate prior to a determination in the extradition proceedings.

3. *E. g., In re Chan Kam-Shu,* 477 F.2d 333, 338 n. 9 (5th Cir.), *cert. denied,* 414 U.S. 847, 94 S.Ct. 112, 38 L.Ed.2d 94 (1973).

that Vardy is "found" in the United States for the purposes of our extradition treaty with Canada. Vardy makes his home in Florida and enjoys the benefits which accrue to an alien who possesses a card designating him as a permanent resident of the United States. The immediate cause for his physical presence in the United States at the time the extradition proceeding began was his own initiative in employing the federal courts to interrupt the continuity of his transfer from Panama to Canada. No official of the federal government, other than the U. S. Marshal acting on behalf of Vardy's attorney, had anything to do with arranging his trip from Panama to Canada or with prolonging his stay in Miami. Regardless of the legality or morality of the actions of the Canadian or Panamanian. governments, Vardy was "found" in the United States on the afternoon of January 25, 1974, and at all material times thereafter.

Appellant primarily relies on *In re Chan Kam-Shu,* 477 F.2d 333 (5th Cir.), *cert. denied,* 414 U.S. 847, 94 S.Ct. 112, 38 L.Ed.2d 94 (1973). In that case, Chan was a foreign seaman who was physically present in the United States only because the United States Coast Guard instructed the vessel on which he served to approach the Florida coast. This court, *sua sponte,* raised the question of whether Chan was actually a "fugitive from justice" under the terms of the applicable extradition treaty, and in the process of deciding this question, we emphasized, without stating why it was important, that Chan was lawfully brought into and detained in this country. *See id.* at 337–39. We do not attempt to explain the reasoning behind this somewhat obscure aspect of *Chan Kam-Shu;* it is sufficient for the purposes of this appeal to distinguish it. This appeal involves the interpretation of different language in an extradition treaty. This petitioner has substantial contacts with the United States apart from the events which brought him before the courts, and federal officials in this case did not cause the petitioner's entrance into the United

States. *Chan Kam-Shu* does not require us to determine the legality under Panamanian or international law of Vardy's departure from Panama, and we reiterate that we express no opinion on this question.

Affirmed.