**In the Matter of EXTRADITION OF Robert Henry RUSSELL.**

**C.A. No. H–86–220M.**

United States District Court,
S.D. Texas,
Houston Division.

July 10, 1986.

Cedric Joubert, Houston, Tex., for U.S.

Robert J. Sussman, and Edward L. Jensen, Houston, Tex., for defendant.

McDONALD, District Judge.

### ORDER

Pending before the Court is the Application for Writ of Habeas Corpus, of Petitioner Robert Henry Russell. Having considered the arguments of the parties and the applicable law, the Court is of the opinion that the Application should be DENIED.

### *Procedural Background*

On May 1, 1986, the United States Attorney for the Southern District of Texas, acting for and on behalf of the Government of the Republic of Colombia, filed a complaint in the case at bar, alleging that Petitioner (a United States citizen) was a fugitive from justice from Colombia, South America; that he had information and belief that Petitioner had been charged with having committed a violation of Article 220 and 356 of the Colombian Penal Code; and requesting that a warrant for Petitioner's arrest issue, under the provisions of 18 U.S.C. § 3184.

On May 1, 1986, Magistrate George A. Kelt, Jr., issued the requested arrest warrant. Petitioner was taken into custody on that day and has since been confined in jail.

On Motion of Petitioner, Magistrate Kelt held a Probable Cause hearing on May 8, 1986, at which he took evidence and ruled that Petitioner did not qualify for bail. The Magistrate further held that, based upon the facts of the case and existing law relating to international extradition cases, Petitioner's continued confinement was justified under the Provisional Detainer provisions of Article 11 [1] of the Treaty of Extradition between the United States of America and Colombia, effective March 4, 1982 (hereafter "Treaty"). An extradition hear-

---

1. Article 11 of the Treaty provides that:
(1) In case of urgency either Contracting Party may request, through the diplomatic channel, the provisional detention of an accused or convicted person. The application shall contain a description of the person sought, a statement of intention to present the request for extradition of the person sought and a statement of the existence of a warrant of arrest or a judgment of conviction against that person.
(2) On receipt of such an application the Requested State shall take necessary steps to secure the detention of the person sought.

(3) Provisional detention shall be terminated if, within a period of 60 days after the apprehension of the person sought, the Executive Authority of the Requested State has not received the formal request for extradition and the documents mentioned in Article 9.
(4) The termination of provisional detention pursuant to paragraph (3) shall not prejudice the extradition of the person sought if the extradition request and the supporting documents mentioned in Article 9 are delivered at a later date.

ing at which certification of extraditability is to be considered has not yet been held.

Petitioner makes essentially four arguments: (1) that the Magistrate erred in refusing to grant Petitioner bail, in violation of the 8th Amendment; (2) that Petitioner was confined in violation of the 4th Amendment in that his continued confinement under Article 11 of the Treaty was not based on probable cause; (3) that Petitioner is confined in violation of the 4th and 5th Amendments, and Article 11 of the Treaty, because the Magistrate did require evidence of "urgency" in allowing provisional arrest; (4) that Article 8 of the Treaty pre-empts Article 11, thereby making Petitioner not extraditable, and depriving the Court of jurisdiction over the extradiction request. The United States (hereafter the "Government") in turn suggests that the Court has no jurisdiction to review a petition for habeas corpus concerning a bail determination and a decision to provisionally detain a person made by a Magistrate in an extradition proceeding prior to a formal extradition hearing absent "unusual circumstances," in turn implying that they are absent in the above-captioned matter. The Court will address the jurisdictional argument first, then each of Petitioner's arguments in turn.

### Jurisdiction

The Government argues that in a matter in which bail has been denied in an international extradition proceeding pending an extradition hearing the decision to review a petition for habeas corpus should be carefully considered, implying that only where "unusual circumstances" exist should the Court consider a habeas petition. The Government cites as authority *Vardy v. United States*, 529 F.2d 404 (5th Cir.1976), *cert. denied*, 429 U.S. 978, 97 S.Ct. 489, 50 L.Ed.2d 587 (1976), and *Jhirad v. Ferrandina*, 355 F.Supp. 1155 (S.D.N.Y.1973), *rev'd on other grounds*, 486 F.2d 442 (2d Cir.1973). Those cases are distinguishable from the matter before this Court.

In both *Vardy* and *Jhirad* the Court was faced with a situation in which a habeas petitioner had been placed in custody pending an extradition hearing, which hearing had been delayed an inordinate amount of time due to peculiar circumstances (in *Jhirad* the Magistrate had died after the petitioner was arrested by warrant on complaint; in *Vardy* the case had been pending for over two years following petitioner's arrest). The District Court in each case heard a petition for habeas corpus on threshold extraditability jurisdictional issues prior to an extradition hearing, stressing that it did so only because "unusual circumstances" were present, and that deferring habeas review until there was a determination of extraditability was the preferable procedure.

In both cases the issue addressed was extraditability, and involved a situation in which a District Court stepped in to make a ruling prior to a final determination by a Magistrate on that issue, normally a matter left for habeas review following such a determination made on the merits in an extradition hearing. In the matter at hand, by contrast, the Court is asked to review, by habeas petition, final determinations made by a Magistrate following Petitioner's arrest and prior to an extradition hearing, pursuant to a treaty.

■ In *Wright v. Henkel*, 190 U.S. 40, 23 S.Ct. 781, 47 L.Ed. 948 (1903), the United States Supreme Court reviewed a decision by a Circuit Court which had reviewed, by habeas petition, prior to an extradition hearing, a decision by a Magistrate to issue a warrant and to deny bail. The Court stated that:

> The writ of *habeas corpus* cannot perform the office of a writ of error, but the court issuing the writ may inquire into the jurisdiction of the committing magistrate in extradition proceedings ... and it was on the ground of want of jurisdiction that the writ was applied for ... as also on the ground that petitioner should have been admitted to bail. *Id.* at 57, 23 S.Ct. at 784.

The Court then reviewed the lower Court's decisions without any further comment on their reviewability. Thus, bail determina-

tions made by a Magistrate prior to an extradition hearing are, by inference, reviewable by habeas petition. Courts have, since *Wright*, and subsequent to *Vardy* and *Jhirad*, reviewed bail determinations made by lower courts prior to an extradition hearing without noting that "unusual circumstances" existed such as to warrant that review. *See U.S. v. Williams*, 611 F.2d 914 (1st Cir.1979); *Beaulieu v. Williams*, 430 F.Supp. 915 (D.Mass.1977), *rev'd. mem* 553 F.2d 92 (1st Cir.1977); *U.S. v. Messina*, 566 F.Supp. 740 (E.D.N.Y. 1983). The Court concludes that habeas review of a bail determination by a Magistrate prior to an extradition hearing is permissible and appropriate and that no showing of "unusual circumstances" need be made.[2] The plain language of 28 U.S.C. § 2241(c)(3) permits it.

■ Similarly, the Court concludes that a determination made by a Magistrate that a potential extraditee should be provisionally detained pending receipt of a formal request for extradition and extradition documents, under a provisional detention article in a treaty such as that in the Treaty at issue here, is reviewable prior to an extradition hearing without a necessity of showing the presence of "unusual circumstances." In that situation, the Magistrate has also made a final determination resulting in the potential extraditee being placed in custody, pending an extradition hearing. The United States Constitution governs the manner in which the United States acts to detain a person pending extradition. *See Rosado v. Civiletti*, 621 F.2d 1179 (2d Cir. 1980) (citing *Grin v. Shine*, 187 U.S. 181, 23 S.Ct. 98, 47 L.Ed. 130 (1902)). Thus, the guarantees in the Constitution of due process and probable cause for detention apply. Nowhere has it been indicated that

aliens and nationals are to be treated differently in this regard. Consequently, such an action by a magistrate is reviewable under the plain language of 28 U.S.C. § 2241(c)(3). *See Caltagirone v. Grant*, 629 F.2d 739 (2nd Cir.1980), in which the Court reviewed a provisional detention determination on a writ of habeas.

■ However, the Court agrees with the Government that the scope of habeas review for such determinations is "very narrow." *Jhirad*, 355 F.Supp. at 1158. Neither party has provided the Court with a case citing the standard of review pertinent to the above determinations, and the Court's own research has found none. The Court considers it appropriate to adapt the standard of review utilized in reviewing extraditability issues. Thus, the Court will only inquire whether the Magistrate had jurisdiction, whether the offense charged was within the Treaty, and whether there were reasonable grounds for the Magistrate's findings ordering no bail, and/or ordering provisional detention under an appropriate treaty provision.[3] *See Wacker*, 348 F.2d at 606 and cases cited therein. In terms of a probable cause determination, the Court finds that the Magistrate "should not require evidence to convince himself that the defendant was guilty, but only that he be 'furnish(ed) good reason to believe that the crime alleged had been committed by the person charged with having committed it'". *Jimenez v. Aristeguieta*, 311 F.2d 547, 562 (5th Cir.1962), *cert. denied*, 373 U.S. 914, 83 S.Ct. 1302, 10 L.Ed.2d 415 (1963), *quoting United States v. Burr*, 25 Fed Cas. p. 2, 12 No. 14692a (C.C.D.Va.1807); *See also Caltagirone*, 629 F.2d at 743 (probable cause means a showing that there was reason to believe a

---

**2.** *Cf. Wacker v. Bisson*, 348 F.2d 602 n. 7 (5th Cir.1965), in which the Court stated that exclusion and deportation cases provided a "useful analogy" for extradition cases, and *O'Rourke v. Warden Metropolitan Correction Center*, 539 F.Supp. 1131 (S.D.N.Y.1982) (habeas review of bail determination allowed prior to resolution of deportation proceedings). *See also U.S. v. Ghandtchi*, 697 F.2d 1037 (11th Cir.1983) in which the Eleventh Circuit held that interlocutory decisions on bail were not directly appeal-

able, but made no indication they were not reviewable on a habeas petition.

**3.** *Cf. Wacker* and *O'Rourke*, as in n. 1, above. The standard of review of bail determinations by a Magistrate in a predeportation proceeding is whether the decision is supported by, or has reasonable foundation in, the record. *O'Rourke*, 539 F.Supp. at 1135.

crime had been committed in that foreign country, and that defendant had committed it); *U.S. v. Messina,* 566 F.Supp. 740, 742 (E.D.N.Y.1983). Since the above extraditability standards have been applied in both pre-extradition hearing situations and post-extradition hearing situations,[4] and the same legal principles apply as to bail determinations in both pre-extradition hearing situations and post-extradition hearing situations,[5] the Court concludes that the above standards apply to the determinations at issue in the matter at hand.

■ As a threshold determination, the Court finds that the Magistrate had jurisdiction under 18 U.S.C. § 3184, in that a treaty did, in fact, exist, and a complaint had been made under oath charging Petitioner, found within his jurisdiction, with having committed within the jurisdiction of Colombia a crime, which was an offense covered by the Treaty.[6] Petitioner does not challenge either of these points. The Court also finds that the Magistrate, in reviewing Article 8 of the Treaty, could reasonably conclude that its plain language did not foreclose extradition of the United States' own nationals altogether, thus, in effect, pre-empting Article 11 and precluding his jurisdiction.[7] The language of Article 8 is clearly permissive and discretionary as it relates to persons, as is true in Petitioner's case, not covered by the provisions at Article 8(1)(a) or (b). Thus, the sole

issues left for the Court's review are whether any evidence supported the Magistrate's determinations as to bail, and as to Petitioner's detention under Article 11. The Court will examine each determination in turn.

### A.) *Bail*

■ In an extradition matter, "(t)he ordinary technicalities of criminal proceedings are applicable to [those] proceedings ... only to a limited extent." *Wright,* 190 U.S. at 57, 23 S.Ct. at 784 (citing *Grin, supra,* and *Tucker v. Alexandroff,* 183 U.S. 424, 22 S.Ct. 195, 46 L.Ed.2d 264 (1902)). Hence, provisions of the Bail Reform Act would not apply. *See In re Mitchell,* 171 F. 289 (S.D.N.Y.1909) (bail in extradition cases determined independently of statute). In terms of bail determinations, the ordinary presumption in favor of granting bail is modified when a person faces a warrant of extradition. *Beaulieu v. Hartigan,* 554 F.2d 1 (1st Cir.1977) (citing *Wright, supra,* 190 U.S. at 62–63, 23 S.Ct. at 786–87). The "standard for release on bail for persons involved in extradition proceedings is a more demanding standard than that for ordinary accused criminals awaiting trial." *Hu Yau-Leung v. Soscia,* 649 F.2d 914, 920 (2d Cir.1981), *cert. denied,* 454 U.S. 971, 102 S.Ct. 519, 70 L.Ed.2d 389 (1981), (citing *Wright,* 190 U.S. at 62, 23 S.Ct. at 786 and *Beaulieu,* 554 F.2d at 2). In fact, because of the treaty

---

**4.** *See Jhirad,* 355 F.Supp. at 1158.

**5.** *See Williams,* 611 F.2d at 914.

**6.** Petitioner was charged with having committed the Crime of Fraud and Falsehood of a Private Person in Public Documents, and related acts, in violation of Articles 220 and 356 of the Colombian Penal Code. Article 2 of the Treaty defines extraditable offenses as those described in the Appendix to the Treaty. The appendix contains a schedule of offenses which lists fraud, receipt or transportation of unlawfully obtained property, and offenses against the laws relating to international trade and transfer of funds (items 10, 13, 35).

**7.** Article 8 of the Treaty provides that:

(1) Neither Contracting Party shall be bound to deliver up its own nationals, but the Executive

Authority of the Requested State shall have the power to deliver them up if, in its discretion it be deemed proper to do so. However, extradition of nationals will be granted pursuant to the provisions of this Treaty in the following instances:

(a) Where the offense involves acts taking place in the territory of both States with the intent that the offense be consummated in the Requesting State; or

(b) Where the person for whom extradition is sought has been convicted in the Requesting State of the offense for which extradition is sought.

(2) If extradition is not granted pursuant to paragraph (1) of this Article, the Requested State shall submit the case to its competent judicial authorities for the purpose of initiating the investigation or to further the related prosecution, provided that the Requested State has jurisdiction over the offense.

obligations of the United States, a presumption against bail exists in extradition proceedings, and only the existence of "special circumstances" will warrant it. *U.S. v. Kamrin,* 725 F.2d 1225, 1228 (9th Cir.1984), *cert. denied,* 469 U.S. 817, 105 S.Ct. 85, 83 L.Ed.2d 32 (1984); *Hu Yau Leung,* 649 F.2d at 920; *Wright,* 190 U.S. at 63, 23 S.Ct. at 787; *Williams,* 611 F.2d at 915; *Beaulieu,* 554 F.2d at 2; *In re Mitchell,* 171 F. at 289. Cases discussing the standard "have limited [the term] 'special circumstances' to situations where 'the justification is pressing as well as plain,' *In re Klein* [46 F.2d 85 (S.D.N.Y.1930)] ... or 'in the most pressing circumstances, and when the requirements of justice are absolutely peremptory.' *In re Mitchell, supra.*" *Williams,* 611 F.2d at 915. Admission to bail "should be in practice an unusual and extraordinary thing," *U.S. ex. rel. McNamara v. Henkel,* 46 F.2d 84, 84 (S.D.N.Y.1912), and courts should "exercise the power very sparingly and only when the justification is pressing as well as plain." *In re Klein,* 46 F.2d at 85.

█ The Court finds that there was ample evidence to support the Magistrate's determination that "special circumstances" did not exist such as to justify bail, and that he thus had reasonable grounds for his determination. Petitioner cites as "special circumstances" the following, as brought out by testimony at the hearing: (1) the existence of pending civil litigation directly related to the case for which extradition is sought; (2) the complexity of the instant matter, necessitating ongoing and extensive consultation between Petitioner and his attorneys, as well as investigation and travel abroad and in the United States by his attorneys, which requires that he be available for consultation; (3) that he is not a flight risk, in that he has known about these proceedings for over two years, has not fled, but rather has co-operated fully with requests of the Colombian government.[8] Further, he has lived in Houston

since 1978, has a wife and four children here economically dependent upon him, served in the U.S. Navy for twenty-two and one-half years, has participated actively in community affairs, and has travelled out of the country and returned on several occasions. Finally, several prominent business men, a law enforcement officer, a legislator, and a professor at Harvard Law School, have stated that, in their opinion, he is not a flight risk; (4) Petitioner stands to lose several large business commissions if he is denied bail and must remain in custody.

The fact that Petitioner is currently involved in pending civil litigation relating to the extradition proceedings is not a "special circumstance" under the circumstances of the matter at hand. This is not a situation where, as was true in *In re Mitchell, supra,* Petitioner faces being arrested on the eve of a complex civil trial upon which his whole fortune depends. Ample time remains for Petitioner to consult with his attorneys as to that pending litigation. Moreover, Petitioner also has ample time in which to consult with his attorneys on the matter at hand, and to guide their investigative efforts. His personal participation in these matters is not required. *See Messina,* 566 F.Supp. at 743.

The Court agrees that the possibility that Petitioner may lose business commissions by not being admitted to bail, and that his family will lose his economic support, are factors which, although unfortunate, do not constitute "special circumstances." Presumably a large number of nearly all potential extraditees are in this situation and, in the opinion of the Court, these are not the sorts of factors the case law contemplates as constituting "special circumstances."

The strongest factor Petitioner has weighing in his favor is that he is "arguabl(y) acceptab(le) as a tolerable bail risk." *Williams,* 611 F.2d at 915, given evidence of his personal stability and some

---

**8.** A warrant for Petitioner's arrest was issued in Columbia on June 2, 1984, and he was indicted by the Colombian government in September of

1984. Petitioner met with an official of the Colombian government in January of 1984, to discuss the case.

ties to the Houston area. However, the Courts of Appeal have made it clear that that is not a "special circumstance" standing alone;[9] where other evidence exists indicating that the person is a flight risk, bail will be denied. *See Messina*, 566 F.Supp. at 742.

There is a considerable amount of evidence weighing against granting bail in the matter at hand. In the first place, the Government is adamantly opposed to it. *See Messina*, 566 F.Supp. at 742. Until the complaint was filed Petitioner did not face imminent extradition. Petitioner has been in Houston only seven and one-half years, has held several positions during that time, is currently an international broker or agent, which business is easily transferrable to another country, and, according to testimony of his own and others, has not consummated any significant business deals to date which might provide him with an incentive to stay here. He is an experienced pilot, and has travelled extensively across international borders. Further, Petitioner has an established associate living in Austria, who had also been charged by the Colombian government in connection with the same incident; the Austrian government has refused to extradite that associate. Finally, the fact that several persons investigating the case or accused in the case have been killed weighs towards inferring Petitioner is likely to not want to return there for trial despite his assurances that he does not fear for his safety. (In fact, his counsel stated at the hearing that he feared for Petitioner's safety). Thus, sufficient evidence exists in the record to indicate that Petitioner is a potential flight risk.

In sum, there was sufficient evidence, upon the basis of the record, for the Magistrate to conclude that no "special circumstances" exist such as to compel the allowance of bail. The matter at hand differs from that of *In re Mitchell*, (see above discussion), or *Hu Yau-Leung, supra* (in which bail was granted in a case involving a 16 year old boy, who conformed to his parents' wishes, whose parents had lived and worked for many years in the United States, and where no suitable facility existed to hold him). Nor is there any evidence that the extradition hearing will be unduly delayed (*See McNamara, supra*). The Court concludes that no evidence of a "sufficiently grave special circumstance" exists such as to require reversal of the Magistrate's determination. *See Williams*, 611 F.2d at 915.

### B.) *Probable Cause*

 Petitioner argues that he was arrested and is confined without a basis in or a finding of probable cause. The Court concludes that the Magistrate made a probable cause determination, and had a reasonable basis for that determination.

Petitioner first argues that Article 11 of the Treaty is violative of the Fourth Amendment because it allows for an arrest without a showing of probable cause. Even assuming, *arguendo*, that Article 11 does not contain a probable cause requirement, and may be thus violative of the Constitution, the Petitioner has not been harmed, and the Court does not have to address that issue, because the Magistrate interpreted the provision as requiring a finding of probable cause, held a full probable cause hearing, and made a finding of probable cause before ordering Petitioner's detention under Article 11.

At that hearing the Magistrate had before him, as part of the record under consideration, the complaint filed May 1, 1986, charging, *inter alia*, that the Government had been informed through diplomatic channels that Petitioner and others had been charged in Colombia with offenses in violation of Articles 220 and 356 of the Colombian Penal Code, specifically, the crime of Fraud and Falsehood of a Private Person in Public Documents. The Complaint further stated that a warrant for Petitioner's arrest had issued on June 2, 1984, by the 23rd Criminal Instruction Court, Colombia. The Complaint enumerated the details of the acts charged under

9. *See Williams*, 611 F.2d at 915; *Beaulieu*, 554 F.2d at 2; *Kamrin*, 725 F.2d at 1228.

warrant, and the details of Petitioner's alleged participation in them. Finally, the Complaint included a description of Petitioner, his address, and other statements in conformity with Article 11 requirements. Based on that Complaint, Magistrate Kelt signed an arrest warrant on May 1, 1986, seven days before the hearing (characterized as a Probable Cause Hearing by the Magistrate.)

Further, at the hearing, the Magistrate accepted into evidence a certification by the Colombian government requesting Petitioner's provisional detention,[10] with an attachment containing a photograph of Petitioner, a description of the offense charged, and a statement that a warrant had been issued. The Magistrate also accepted into evidence letters from Petitioner to the Consul General of Colombia in Houston explaining his involvement in the matter under investigation, but not denying it, and a reply from the Consul General of Colombia addressing Petitioner's assertions.[11] Finally, the Magistrate heard testimony from various persons, including Petitioner Testimony from Hugh Afanador Lozano, the General Consul of Colombia in Houston, which established that the Government of Colombia viewed the case with "great worry" and "great interest," since the loss of a large amount of state money was involved, that the Government of Colombia intended to supply all of the necessary documents under Article 9 and Article 11 of the Treaty, that the Colombian Government had made an official request to have Petitioner extradited, that Petitioner's provisional detention had been requested under Article 11, that an arrest warrant had issued and formal charges had been made against Petitioner in Colombia, and that an investigation had begun on the case. Petitioner testified, conceding that he was the person sought under the warrant, and the person charged, that he had voluntarily spoken with Colombian Government officials about the offense charged, and that he was also being sued by the Chase Manhattan Bank in London in connection with the offense charged and had been deposed by them.

The Court concludes that the Magistrate gave a full airing to the issue of whether probable cause existed to detain Petitioner under Article 11, and had a reasonable basis for that determination.[12]

C.) *Urgency Determination*

▮ Petitioner claims that he is being held in violation of Article 11 of the Treaty, and the Fourth and Fifth Amendments, in that the Magistrate did not require any evidence of "urgency" as required by the Treaty.

The Magistrate did not, as Petitioner states, make an affirmative finding that the mere assertion on the part of the Colombian government that the case was urgent was sufficient to support Petitioner's provisional detention. Rather, the Magistrate had a full evidentiary hearing on the issue of Petitioner's detention, which included taking evidence and testimony on every conceivable aspect of the case, including the issue of urgency, before deciding to detain Petitioner.

In fact, no showing of urgency by the requesting Government is required by the Treaty, nor have courts required such. In *Messina*, 566 F.Supp. at 745, the court held that a determination by a foreign government that the provisional arrest is a matter of urgency is due deference as a matter of comity, and additionally gave "considerable weight" to the fact that the United States concurred in that determination, "given its foreign affairs interest in the matter." The Court then stated that, taking appro-

---

**10.** *See* Government Exhibit 1.

**11.** *See* Defendant's Exhibits 1, 2, 3.

**12.** *Cf. Illinois v. Gates*, 462 U.S. 213, 229, 103 S.Ct. 2317, 2327, 76 L.Ed.2d 527 (1983), in which the U.S. Supreme Court held that, in reviewing a probable cause determination, the Court must determine whether, from the totality of circumstances provided in affidavits [or, as in the matter at hand, evidence and testimony presented at a pre-extradition provisional detainer hearing in that a lesser level of evidence is required. *See Caltagirone*, 629 F.2d at 747.] A Magistrate had a substantial basis in determining that probable cause existed.

priate account of the determinations of both governments and the facts presented in the case as to the risk of flight, urgency had been established. Similarly, in *United States v. Leitner*, 784 F.2d 159, 161 (2d Cir.1986), the Court stated that the term "urgency" was

> not merely temporal in nature. Rather, the term involves other considerations including importance to the country seeking extradition and foreign policy concerns to the United States.

In *Leitner*, the Court focused on such factors as the nature of the crime, the risk of flight, and the interests of the countries in extradition, taking into account the interests of the treaty parties. The Court specifically noted that the fact that the treaty parties moved slowly in arresting Petitioner was less related to an "urgency" determination than the above factors.

At the May 8 hearing evidence was offered in the form of a Certificate from the Colombian government[13] attesting to that country's demand for provisional detention of Petitioner. The Consul General for Colombia in Houston stated the importance of the case to Colombia, given the amount of lost Government money involved, testifying that "the Government of Colombia is seen with great worry and great interest in the investigation of this case." (Tr. 16). Further, as to the timing of the request, the Consul General indicated that once a warrant issues in Colombia, further investigation takes place to develop more evidence prior to a prosecutor seeking the actual arrest of an individual, and that the prosecutor would not seek the arrest until much more investigation had taken place. Thus, the Court sees no significance, in terms of its effect on an "urgency" finding, in the fact that Colombia claims "urgency" over two years after the warrant was issued, given the complexity of the case. The Government has concurred with the Colombian government's determination to seek Petitioner's provisional arrest. Finally, at the hearing Petitioner put on evidence indicating that he was aware the case is active-

ly being pursued in Colombia, that the Colombian government refuses to accept his version of the events of May 11, 1983, and that physical dangers might well exist in Colombia for individuals charged or connected to the case, thereby leading to the inference that the risk of flight is significant. Other factors enumerated in the discussion on the bail determination above, add additional evidence to a flight risk inference.

In view of the importance of the case to Colombia, given the loss of Government funds and the amount involved the Colombian government's statement that provisional detention is bought, a request with which the United States Government concurs, the importance of foreign policy concerns involved here, and the evidence in the record indicating a potential flight risk, the Court finds that there was a reasonable basis for the Magistrate's finding that "urgency" had been established sufficiently to cause the provisional detention of Petitioner under Article 11 of the Treaty.

### D.) *Article 8*

Finally, Petitioner contends that Article 8 of the Treaty bars extradition of Petitioner and deprives the Court of jurisdiction over this matter. (see n. 7, above). The Court concludes that a facial reading of the plain language of the Article indicates that extradition of nationals who have, as is the case in the matter at hand, not been convicted in the Requesting State of the offense for which extradition is sought, or where the offense does not involve acts taking place in the territory of both states with the intent that it be consummated in the Requesting State, is discretionary with a Contracting Party. The Court concludes that nothing in Article 8 deprives it of jurisdiction to consider issues surrounding the extradition request concerning the Petitioner. For all of the foregoing reasons, it is

ORDERED, ADJUDGED and DECREED that Petitioner's Application be and hereby is DENIED.

---

**13.** *See* Government Exhibit 1.

The Clerk shall file this Order and provide a true copy to counsel for all parties.