UNITED STATES of America, Petitioner,

v.

Derrick Leon HILLS, a/k/a Stacey Shelby, Defendant.

No. 91–X–71682.

United States District Court, E.D. Michigan, S.D.

May 16, 1991.

Ross Parker, Asst. U.S. Atty., for petitioner.

Rafael Villaruel, Detroit, Mich., for defendant.

OPINION AND ORDER DENYING DEFENDANT'S MOTION FOR BOND PENDING EXTRADITION HEARING

ROSEN, District Judge.

## I. INTRODUCTION

This is an extradition action. The Canadian government, through the U.S. Attorney's office, is pursuing the extradition of Defendant Derrick Leon Hills, a/k/a Stacey Shelby,[1] under the terms of the Treaty on Extradition between the United States and Canada. Shelby has been charged by Canadian authorities with various crimes in connection with a January 4, 1991 armed bank robbery in Windsor, Ontario. The events leading up to Defendant's arrest at the request of the Canadian government are detailed in documents in the Court file of this matter, and are summarized below.

This matter is presently before the Court on the Motion of Defendant for an order directing that he be released on bail pending his extradition hearing, which, according to the Court's file, is scheduled for May 29, 1991. The Court heard oral argument on Defendant's Motion on May 16, 1991. Having reviewed and considered Defendant's Motion and Brief and having heard the oral arguments of counsel at the May 16, 1991 hearing, the Court is now prepared to rule on this matter, and this Opinion and Order sets forth that ruling.

**1.** Hills had his name legally changed to Stacey Ray Shelby on July 31, 1990, and, therefore, will be referred to herein as "Shelby".

## II. PROCEDURAL HISTORY AND FACTUAL BACKGROUND

On April 16, 1991, the United States Government requested and obtained a warrant for the immediate arrest of Defendant Shelby, pursuant to 18 U.S.C. § 3184 and the Treaty on Extradition between the United States and Canada, pending receipt of a regular diplomatic request for extradition, with accompanying documentation, in conformity with Article 11 of the Extradition Treaty. The Government further requested in its April 16, 1991 application that Shelby be detained by the United States Marshal pending the conduct of an extradition hearing.

Defendant Shelby was brought before Magistrate Judge Paul J. Komives, on that same date. Shelby's initial appearance was continued to April 17, 1991 because he had indicated on April 16 that he was hopeful of having counsel of his own selection represent him. [*See*, 4/17/91 Order of Magistrate Judge Paul J. Komives, p. 1.] At the continued hearing on April 17, 1991, however, Shelby requested the appointment of counsel, stating that he was unable to retain an attorney of his own because of lack of funds. Accordingly, Magistrate Judge Komives appointed the Federal Defender Office to represent him. *Id.*

### A. BASIS FOR THE WARRANT FOR SHELBY'S ARREST

According to the sworn Application of Assistant United States Attorney Ross Parker presented to Magistrate Judge Komives on April 16, 1991, the United States Attorney's office was informed through diplomatic channels that Shelby is duly and legally charged with having committed in Windsor, Ontario, Canada (1) robbery; (2) use of a firearm while committing an offense; (3) possession of an unregistered restricted weapon; and (4) possession of a firearm with serial number defaced, all in violation of §§ 85(1)(A), 91(1), 104(3) and 344 of the Canadian Criminal Code. These offenses were allegedly committed on Jan-

uary 4, 1991, when Defendant Shelby "did use an unregistered .25 caliber semi-automatic pistol, with a defaced serial number, to rob the Bank of Montreal, 1295 Walker Road of a quantity of currency." [April 16, 1991 Application for Warrant, pp. 1–2.]

AUSA Parker's sworn application further indicates that a warrant for the arrest of Defendant Shelby was issued on April 16, 1991 by Judge Joseph McMahon of the Ontario Court (General Division), Windsor, Canada. [4/16/91 Application p. 1.] Parker further states that the crimes with which Shelby is charged are among the offenses enumerated in Article 2 of the Treaty on Extradition between the United States of America and Canada, 27 UST 983, TIAS 8237. [4/16/91 Application pp. 2–3.]

According to the application for immediate arrest warrant, Defendant Shelby "fled the outside boundaries of Canada"[2] and the warrant for his arrest issued by the Ontario Court Judge cannot be served in the United States. [4/16/91 Application, p. 2.]

### B. MAGISTRATE JUDGE KOMIVES' DETERMINATION REGARDING BAIL

At the continued April 17, 1991 hearing, Magistrate Judge Komives ruled on the Government's request to order Shelby detained by the Marshal pending the holding of an extradition hearing. The Magistrate Judge issued a written Order that date

granting the Government's request. In that April 17, 1991 "Order Remanding Accused to Custody Pending Extradition Hearing", the Magistrate Judge stated his reasons for refusing Defendant Shelby's request that he be released on bail pending the extradition hearing:

... As argued by the Government, the presumption in extradition matters favors detention unless unusual circumstances warrant admission to bail in the discretion of the Court. While certain unusual features are present in this case, I conclude that the usual presumption should be applied in this case. A report from the Pretrial Services Agency of this Court, done at my request, also recommends detention and notes an outstanding warrant from a state district court based upon failure to appear. Accordingly,

IT IS ORDERED that the United States Marshall shall maintain custody of the accused pending the holding of an extradition hearing, which is currently scheduled for May 29, 1991, at 9:00 a.m., before the undersigned.

[April 17, 1991 Order, pp. 1–2.]

### C. BASIS OF DEFENDANT'S INSTANT MOTION FOR BOND PENDING EXTRADITION HEARING

On May 9, 1991, Defendant Shelby filed the instant "Motion for Bond Pending Extradition Hearing".[3] It is Defendant's posi-

---

2. Shelby disputes that he "fled the outside boundaries of Canada"; he states at page 1 of his Brief in Support of this Motion that

"Defendant was held in Canadian custody from January 4, 1991 until April 16, 1991. On that date Canadian officials released Defendant from custody and gave him two hours to leave the country. Defendant returned to his mother's home in Detroit and was arrested by United States officials pursuant to a request from the Canadian government based on the aforementioned bank robbery."

Defendant's counsel further explained these assertions at the May 16, 1991 hearing. He also submitted a copy of a letter from the Windsor Police Service which explained some of these matters. It appears that Defendant was arrested on January 4, 1991 by Canadian authorities on the United States side of the Detroit–Windsor tunnel. Shelby was immediately thereafter remanded to custody in Windsor. He subsequent-

ly filed a habeas corpus complaint against the Windsor police challenging his arrest by the Canadian authorities on American soil. Apparently, after investigating Shelby's complaint, and after consultation with the U.S. Embassy and the Attorney General, the Canadian authorities released him on April 16, 1991 and ordered him to leave that country within two hours of his release, and then proceeded with seeking to have him provisionally arrested in the United States by the FBI pursuant to the Extradition Treaty.

3. Although not so captioned, Defendant's counsel admitted at the May 16, 1991 hearing that Defendant's Motion for Bond Pending Extradition Hearing is actually an appeal from Magistrate Judge Komives' April 17, 1991 Order. Although there is some authority that appears to suggest that under these circumstances, the inquiry of this Court is limited to determining whether there were reasonable grounds for the

tion that he is entitled to bail pending his extradition hearing because he claims that he does not pose a risk of flight and his case presents "special circumstances" warranting his release from incarceration. According to Defendant's Brief in Support of his Motion, these "special circumstances" are as follows:

1) *He is not a flight risk or danger to the community.* In support of this contention, Defendant claims that he has been successfully placed on bail in previous state cases.[4] He further claims, as noted in footnote 1, *supra,* that he did not attempt to flee upon his release from Canadian custody, but merely returned to his mother's home in Detroit. As further support for this "no risk of flight" contention, Shelby claims that he has strong ties to the community. He states that his mother, father, uncle and daughter all live in Detroit. He further claims that has been seeking employment in the Detroit area and has been assured employment upon his release from custody. He also claims that he is active in area churches and educational facilities.

2) *Defendant is involved in various pending civil actions.* Shelby claims that he is "deeply immersed" in various pending civil litigation, to-wit: child custody and visitation rights proceedings and civil rights suits that he has recently instituted against various Canadian government officials regarding his arrest and detention in Canada.

3) *Defendant intends to challenge the investigative procedures leading to his arrest.* Shelby claims that he has several procedural and constitutional defenses to his arrest and the Canadian charges against him which bear on the of the merits of the imminent extradition proceedings against him.

## III.  DISCUSSION

### A.  THE STANDARDS APPLICABLE TO REQUESTS FOR RELEASE ON BAIL IN EXTRADITION CASES

■ As Defendant, himself, concedes, it is well-settled that, unlike the situation for domestic crimes, in foreign extradition cases, there is a presumption *against* bail. *Wright v. Henkel,* 190 U.S. 40, 63, 23 S.Ct. 781, 786, 47 L.Ed. 948 (1903); *Beaulieu v. Hartigan,* 554 F.2d 1, 2 (1st Cir.1977); *United States v. Leitner,* 784 F.2d 159, 160 (2d Cir.1986); *Salerno v. United States,* 878 F.2d 317, 318 (9th Cir.1989); *In the Matter of Extradition of Russell,* 647 F.Supp. 1044, 1048 (S.D.Tex.1986), *aff'd,* 805 F.2d 1215 (5th Cir.1986); *United States v. Taitz,* 130 F.R.D. 442, 444 (S.D.Cal.1990).

The rationale for distinguishing pretrial release in extradition cases from domestic criminal cases in which pretrial liberty is the norm[5] is that extradition proceedings

magistrate judge's findings ordering no bail, *In the Matter of Extradition of Russell,* 647 F.Supp. 1044 (S.D.Tex.1986), *aff'd,* 805 F.2d 1215 (5th Cir.1986); *Koskotas v. Roche,* 740 F.Supp. 904, 918 (D.Mass.1990), *aff'd,* 931 F.2d 169 (1st Cir. 1991), since no statute or case squarely address the standard of review of magistrate judge's orders in extradition matters, the Court will review the magistrate's decision *de novo.*

**4.** This contention appears to be controverted by Magistrate Judge Komives' finding, based upon the Pretrial Services report prepared at his request, that there is an outstanding warrant from a state district court for Defendant's arrest for failure to appear. At the May 16, 1991 hearing, Defendant's counsel explained that Defendant was convicted for retail fraud and sentenced to probation. According to Defendant, the warrant referenced in the Pretrial Services report had to do with that conviction, but was not a warrant for failure to appear, but rather for failure to comply with a court order directing him to pay to that court $50.00 per month for

four months as restitution for the retail fraud. He admitted that he did not make any of the required payments.

**5.** *See, United States v. Salerno,* 481 U.S. 739, 107 S.Ct. 2095, 2105, 95 L.Ed.2d 697 (1987). In *Salerno,* the Court construed the provisions of the Bail Reform Act of 1984, under which the procedure is to release a defendant awaiting trial on a domestic crime on only those conditions reasonably necessary to assure his presence at trial and to safeguard the community and any particular person. Only if there are no such conditions available can the court order pretrial detention.

In his Brief in Support of his Motion for Bond in the instant case, Defendant cites *Salerno* for the proposition that bail should be favored in extradition cases. Defendant's reliance on *Salerno,* which was *not* an extradition case, is misplaced. In fact, several courts have expressly held that that case and the provisions of the Bail Reform Act do not apply in extradition actions.

involve the Government's overriding foreign relations interest in complying with treaty obligations and producing extradited persons. *United States v. Leitner, supra; United States v. Taitz, supra; United States v. Messina,* 566 F.Supp. 740, 742 (E.D.N.Y.1983). As the *Taitz* court, explained, "If the United States were to release a foreign fugitive pending extradition and the defendant absconded, the resulting diplomatic embarrassment would have an effect on foreign relations and the ability of the United States to obtain extradition of its fugitives." *Taitz, supra,* 130 F.R.D. at 444. *See also, Wright v. Henkel, supra,* the seminal case in which the Supreme Court established the presumption against bail and set forth the requirement of a showing of "special circumstances" for departure against that presumption, where the Court explained that its primary concern was ensuring that our Government be able to deliver the accused when the nation seeking extradition had complied with the extradition treaty. *Id.,* 190 U.S. at 62, 23 S.Ct. at 786.

■ Thus, the standard for release on bail for persons involved in extradition proceedings is a more demanding standard than that for ordinary accused criminals awaiting trial; only the existence of "special circumstances" will warrant bail in extradition cases. *Hu Yau–Leung v. Soscia,* 649 F.2d 914, 920 (2d Cir.1981), *cert. denied,* 454 U.S. 971, 102 S.Ct. 519, 70 L.Ed.2d 389 (1981) (*citing, Wright v. Henkel, supra,* 190 U.S. at 62, 23 S.Ct. at 786, *Beaulieu v. Hartigan, supra,* 554 F.2d at 2; *United States v. Williams,* 611 F.2d 914 (1st Cir.1979)); *Kamrin v. United States,* 725 F.2d 1225, 1228 (9th Cir.1984), *cert. denied,* 469 U.S. 817, 105 S.Ct. 85, 83 L.Ed.2d 32 (1984). This "special circumstances" test applies to requests for release on bail both before and after an extradition hearing; it also applies to re-

quests for release on bond, made after only a "provisional" arrest pending the extraditing country's submission of formal extradition documents. *Wright v. Henkel, supra; United States v. Messina, supra; In the Matter of Extradition of Russell, supra. See also, United States v. Williams, supra,* and cases cited therein.

Mindful of the overriding foreign relations interest in extradition matters, courts take a very limited view of what constitutes sufficient "special circumstances" to justify a departure from the presumption against bail:

> Admission to bail "should be in practice an unusual and extraordinary thing," and court should "exercise the power very sparingly and only when the justification is pressing as well as plain."

*In the Matter of Extradition of Russell, supra,* 647 F.Supp. at 1049 (citations omitted). *See also, Beaulieu v. Hartigan, supra,* in which the First Circuit explained, "[W]hile bail [in extradition cases] may be granted in the sound discretion of the district court, the matter should be approached with caution ...," 554 F.2d at 1; and *In re Mitchell,* 171 F. 289 (S.D.N.Y. 1909), in which Judge Learned Hand held that bail should be granted in extradition cases "only in the most pressing circumstances, and when the requirements of justice are absolutely peremptory."

The Court will decide Defendant's Motion for Bond by application of the foregoing principles.

### A. ABSENCE OF FLIGHT RISK IS NOT A "SPECIAL CIRCUMSTANCE"

■ As set forth above, Defendant Shelby claims that he is not a flight risk or danger to the community. In support of this contention, Defendant claims that he has been successfully placed on bail in previous state cases,[6] and that he did not

---

*See e.g., United States v. Taitz, supra,* 130 F.R.D. at 444; *Kamrin v. United States,* 725 F.2d 1225, 1228 (9th Cir.1984), *cert. denied,* 469 U.S. 817, 105 S.Ct. 85, 83 L.Ed.2d 32 (1984).

6. Defendant has not offered anything more than his bare assertion that he has successfully placed on bail in other cases. The Pretrial Ser-

vices report indicates that in addition to felony retail fraud conviction referenced in footnote 4 (which Defendant claims he is currently on probation for, but which probation status Pretrial Services was unable to verify) and the Canadian charges, Defendant was charged with a weapons offense, however, as the report indicates, the disposition of that matter is "unknown".

attempt to "flee" upon his release from Canadian custody, but merely returned to his mother's home in Detroit. As further support for this "no risk of flight" contention, Shelby claims that he has strong ties to the community. He states that is mother, father, uncle and daughter all live in Detroit. He further claims that has been seeking employment in the Detroit area and has been assured employment upon his release from custody. He also claims that he is active in area churches and educational facilities.

While these factors may indeed establish that he is not a "flight risk", *see, United States v. Taitz, supra,* 130 F.R.D. at 445, the fact remains that "absence of risk of flight" is *not* a legally cognizable "special circumstance" to justify release on bail in extradition cases. *United States v. Taitz, supra,* 130 F.R.D. at 444–445; *In the Matter of Extradition of Russell, supra* 647 F.Supp. at 1048–1049; *Salerno v. United States, supra,* 878 F.2d at 318 (denying defendant's motion for bail pending appeal of the district court's order certifying him extraditable to Australia and holding that absence of risk of flight "is not the criteria for release in an extradition case"); *United States v. Leitner, supra,* 784 F.2d at 161 ("Even a low risk of flight would not be dispositive.")

## B. DEFENDANT HAS NOT ESTABLISHED SUFFICIENT OTHER "SPECIAL CIRCUMSTANCES" TO JUSTIFY RELEASE ON BOND PENDING HIS EXTRADITION HEARING.

■ As discussed above, Shelby also argues that the facts that (1) he is "deeply immersed" in various pending civil litigation, (which litigation, according Defendant, includes pending child custody and visitation rights proceedings, and civil rights suits against various Canadian government officials stemming from his earlier detention in Canada), and (2) that he has some procedural/constitutional defenses to raise at his extradition hearing that will bear on the merits of the extradition proceedings establish sufficient "special circumstances" to warrant a departure from the presumption against bail in this case.

Although Defendant Shelby has not detailed what the precise nature of the civil litigation in which he is allegedly "deeply immersed" is, a review of extradition cases in which defendants relied upon the same purported "special circumstances" as alleged by Defendant in this case, indicate that the "pending civil litigation" is rarely found to constitute "special circumstances"; it is only if the court is convinced that the defendant's personal participation in the conduct of the civil litigation is absolutely and immediately necessary that it is it deemed a sufficient "special circumstance" to warrant release on bond.

The Court's review of the case law, in fact, indicates that only one court in one very old case, *In re Mitchell,* 171 F. 289 (S.D.N.Y.1909), was persuaded that the defendant's personal participation was needed in an imminent civil trial and, thus, presented sufficient "special circumstances" to warrant release on bail. In that case, the defendant was arrested on extradition papers issued from Canada, under which he was charged with having committed larceny in that country. The warrant for his arrest was issued on the night before the scheduled commencement of a civil trial in a New York state court. The suit involved a very large sum of money, which the federal district court found to involve "all the fortune" that the defendant had. The trial of the civil suit commenced on June 25, 1909, with the defendant being able to participate that date by virtue of a writ ad testificandum.

On June 26th, Mitchell applied for release on bail asserting as basis for his release "special circumstances" predicated upon his allegation that he was "entirely unable to consult with his counsel and prepare for the remainder of the trial which will consume probably, the 28th, 29th and 30th days of June." The district judge (Judge Learned Hand), granted his application, but restricted his release for only the

duration of the trial. Judge Hand explained:

> [I]t seems to me that the hardship here upon the imprisoned person is so great as to make peremptory some kind of enlargement at the present time, for the purpose only of free consultation in the conduct of the civil suit upon which his whole fortune depends. Those special circumstances alone move me to allow him bail, and his enlargement [of release] *is to be limited strictly to the period of that suit. As soon as that is terminated he must be returned to the Tombs prison to await the determination of the commissioner upon the extradition proceedings.*

171 F. at 290 (emphasis added.)

Recent cases, however, have not found such "special circumstances" to be presented by defendants' allegations of the existence of pending civil litigation or their assertion of defenses to the extradition proceedings.

For example, in *In the Matter of Extradition of Russell, supra,* the defendant cited as "special circumstances" (1) the existence of pending civil litigation; (2) the purported complexity of his extradition case, which he claimed necessitated ongoing and extensive consultation between the defendant and his lawyers; and (3) that he stood to lose several large business commissions if he were to be denied bail and have to remain in custody. The court was not persuaded by Russell's arguments:

> The fact that Petitioner is currently involved in pending civil litigation relating to the extradition proceedings is not a "special circumstance" under the circumstances of the matter at hand. This is not a situation where, as was true in *In re Mitchell,* Petitioner faces being arrested on the eve of a complex civil trial upon which his whole fortune depends. Ample time remains for Petitioner to consult with his attorneys as to that pending litigation. Moreover, Petitioner also has ample time in which to consult with his attorneys on the matter at hand, and to guide their investigative efforts.

His personal participation in these matters is not required.

> The Court agrees that the possibility that Petitioner may lose business commissions by not being admitted to bail, and that his family will lose his economic support, are factors which, although unfortunate, do not constitute "special circumstances." Presumably a large number of nearly all potential extraditees are in this situation and, in the opinion of the Court, these are not the sorts of factors the case law contemplates as constituting "special circumstances."

647 F.Supp. at 1049.

*See also, Koskotas v. Roche,* 740 F.Supp. 904 (D.Mass.1990), *aff'd,* 931 F.2d 169 (1st Cir.1991), in which the court rejected the defendant's pending-civil-litigation allegations of "special circumstances" because there was no evidence to indicate that the trial of the civil action was imminent.

In this case, Defendant admitted at the May 16, 1991 hearing on this matter that there were no trials or hearings scheduled in any of his pending civil suits during the next two weeks (i.e., before the May 29, 1991 extradition hearing). Therefore, the Court does not find that Defendant's other pending civil actions constitute "special circumstances" warranting release on bail in this case.

With respect to Defendant's contention that special circumstances exist here because of his need to assist his attorney to prepare his substantive defenses to the extradition proceedings, in *United States v. Messina, supra,* the court rejected the defendants' contention that "special circumstances" existed in that case because they needed to consult with their attorneys regarding their defense of the extradition proceedings. The *Messina* court found no "special circumstances" because the issues that had to be dealt with by the defendants' attorneys were purely legal ones, and hence, the defendants' personal ongoing participation was not necessary. 566 F.Supp. at 743.

Similarly, in *United States v. Tang Yee–Chun,* 657 F.Supp. 1270 (S.D.N.Y.1987), the court found that the defendant's allega-

tions that he would have difficulty defending his extradition action from jail because of his difficulties communicating with counsel, the large number of documents he needed to review and understand, and the complex legal issues involved in his substantive defenses, cumulatively, did not constitute "special circumstances."

By contrast, in *United States v. Taitz, supra*, the court was persuaded that the legal issues involved in the defendant's extradition, *together with other "special circumstances"* warranted the defendant's release on a $500,000 secured bond, co-signed by all the adult members of his family residing in California and Nevada.

*Taitz* involved proceedings for the extradition of the defendant to South Africa. He was charged by the South African authorities with 434 counts of fraud in relation to the reporting of, or failure to report, diamond transactions, and the consequent underpayment of excise taxes and custom duties. Because of the numerosity and complexity of the charges, and the cartons of exhibits that would have to be considered by the court in determining whether the offenses with which Taitz was charged were extraditable offenses under the Treaty between the United States and South Africa, the court concluded that the extradition proceedings would likely last for as long as two years. The court found that this fact together with the facts that Taitz (1) had been suffering from allergic

reactions to the food served in the correctional center where he was being detained and to the soap used to launder the inmates' clothes and (2) was an orthodox Jew who was unable to carry out the rituals of his religion at the correctional center due to lack of materials and facilities, constituted "special circumstances" meriting pre-extradition hearing release on bond. 130 F.R.D. at 445–447.

The foregoing discussion makes it clear that "pending civil litigation" and "the defendant's asserted 'need' to consult with his attorney to assist in the preparation of defense of the extradition proceedings" are not in and of themselves sufficient without some additional "special circumstances" to warrant departure from the presumption against bail in extradition cases.[7]

Based on the foregoing discussion, the Court finds that no sufficient "special circumstances" exist in this case to justify releasing Defendant Shelby on bond pending his extradition hearing.[8]

█ Defendant's counsel requested at the May 16, 1991 hearing that the Court consider electronic tether monitoring together with a bond secured by Defendant's parents' home, rather than returning him to detention at the Wayne County jail. The Court has considered Defendant's request. However, after consulting with Pretrial Services and the Probation office, the Court has been advised that electronic tethering does not constitute "detention" or

---

7. For example, courts have found "special circumstances" to exist where the extradition hearing had been delayed for four years, *United States ex rel. McNamara v. Henkel*, 46 F.2d 84 (S.D.N.Y.1912), or in the case of a juvenile defendant where there was no suitable facility for her to be held pending her extradition. *Hu Yau–Leung v. Soscia*, 649 F.2d 914 (2d Cir.1981).

8. The Court further notes that it appears that the provisions of the Treaty on Extradition between the United States and Canada, 27 U.S.T. 983—TIAS 8237, 11 I.L.M. 22, contemplate prehearing detention, as opposed to release on bond pending the formal commencement of extradition proceedings.

Paragraph (3) of Article 11 of that Treaty, which was amended by the January 11, 1988 Protocol to the Extradition Treaty, 27 I.L.M. 422 (1988) provides:

A person [provisionally] arrested [upon the application of the extraditing country, pend-

ing the presentation of the formal request for extradition] shall be set at liberty upon the expiration of sixty days from the date of arrest pursuant to such application if a formal request for extradition and the documents specified in Article 9 have not been received. This stipulation shall not prevent the institution of proceedings with a view to extraditing the person sought if the request and documents are subsequently received.

As stated in the Sworn Application of AUSA Ross Parker, the Canadian government requested that a warrant for Defendant Hills' arrest be issued pursuant to the "provisional" arrest terms of Article 11 of the Treaty. Thus, under the terms of the Treaty, it is only if the Canadian government fails to formalize its request for extradition by June 16, 1991, that Defendant Hills "shall" be set at liberty.

custodial "confinement". It is clear to the Court that there being no "special circumstances" in this case, under the Extradition Treaty and under the applicable case law, Defendant must be detained in custody. Because monitored electronic tethering does not constitute custodial detention, this Court finds that it must deny Defendant's request regarding this matter.

## IV. CONCLUSION

For the reasons set forth above in this Opinion and Order,

IT IS HEREBY ORDERED, ADJUDGED AND DECREED that Defendant's Motion for Bond Pending Extradition Hearing be, and hereby is, DENIED. Defendant shall remain in the custody of the United States Marshal pending his extradition hearing.